IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

V.                                            CRIMINAL NO. 1:21-CR-222

JULIAN ELIE KHATER,

and

GEORGE PIERRE TANIOS,

        Defendants.

**DEFENDANT'S MOTION FOR REVIEW OF THE DETENTION ORDER**

**I.  INTRODUCTION**

The Defendant, George Pierre Tanios, by his counsel, Elizabeth B. Gross, Esq., Assistant Federal Defender, and L. Richard Walker, Esq., First Assistant Federal Defender, respectfully files this motion requesting review of the Detention Order issued on March 23, 2021, in the Northern District of West Virginia.  Document 28, Case 1:21-MJ-00027-MJA (NDWV).  This is a serious, high-profile case since it allegedly occurred during a violent breach of the United States Capitol on January 6, 2021.  Like many other cases arising out of that incident, which is now known worldwide, this case is politically charged and controversial.  Yet, unquestionably, Mr. Tanios is presumed innocent and there is a presumption in favor of his release under the Bail Reform Act. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception").  Of course, this presumption of innocence must be honored, and, in such an unusual case, it is critical for this Court to examine the question of detention in a manner that is both dispassionate and apolitical.

To begin, Mr. Tanios emphatically denies each charge and is eager for a jury trial. Mr. Tanios denies conspiring to injure officers. Mr. Tanios denies aiding and abetting his co-defendant, Julian Khater, in any crimes. Mr. Tanios denies assaulting any officer with a dangerous weapon. Mr. Tanios denies any physical violence on restricted grounds, with or without carrying a dangerous weapon, and he denies causing bodily injury. Mr. Tanios asserts his innocence at this time and, given his non-violent background and minimal criminal history, respectfully submits he does not pose a danger to the community or any other person.

Mr. Tanios is an excellent candidate for pretrial release. Mr. Tanios is a unique defendant, having abundant ties to the community, a history of employment, economic stability, a supportive family, and no prior felony convictions. Accordingly, Mr. Tanios respectfully requests that this Court overrule the Detention Order imposed by a United States Magistrate Judge in the Northern District of West Virginia and release Mr. Tanios to his home in Morgantown, West Virginia, under any combination of standard and additional special conditions of bond.

## II. BACKGROUND

Mr. Tanios, age 39, lives in Morgantown, West Virginia. For fifteen years, he has owned and operated multiple restaurants and convenience stores. Most recently, Mr. Tanios operated Sandwich U, which is a well-known restaurant, on a busy street near the campus of West Virginia University. He works approximately 80 hours a week. Mr. Tanios has deep ties to Morgantown, the WVU community and local small business community, making a living as an owner and operator in the service industry since he moved to West Virginia, in 2006.

Mr. Tanios learned the restaurant business from his parents, both legal immigrants, who similarly ran a restaurant in his hometown of New Brunswick, New Jersey. Mr. Tanios lives in Morgantown in a modest townhome with his fiancé and their three children, ages 4, 8 months, and 8 months. Mr. Tanios graduated high school in 2000, from Saint Peter's Preparatory School, in

Jersey City, New Jersey. He attended Middlesex County College, in Edison, New Jersey, where he was enrolled from 2000 to 2001 and participated in general studies courses. Mr. Tanios has ***never*** been convicted of a felony offense. Mr. Tanios has ***never*** been previously accused of acts of violence and he has ***never*** had a reputation for violence.

The Government filed a criminal complaint on ___ date. *See* Document 1, Case 1:21-MJ-00286-ZMF. The complaint alleges that Mr. Tanios attended President Trump's political rally in Washington, D.C., on January 6, 2021, while a joint session of the United States Congress convened at the United States Capitol, First Street, SE, in Washington, D.C. During the joint session, members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep crowds away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep crowds from entering the Capitol; however, as this

Court well knows, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police.

The complaint alleges that shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.

Mr. Tanios is *not* accused of destroying a barricade. Mr. Tanios is *not* accused of entering the U.S. Capitol. Mr. Tanios is *not* accused of breaking or vandalizing anything inside the U.S. Capitol building. Instead, the Government accused Mr. Tanios of offenses taking place outside while in the large crowd with a co-defendant, Julian Khater. Namely, the criminal complaint includes violations of 18 U.S.C. §§ 111(a) and (b) - Assault on Federal Officer with Dangerous Weapon; 18 U.S.C. § 372 - Conspiracy to Injure an Officer; 18 U.S.C. § 231(a)(3) - Civil Disorder; 18 U.S.C. § 1512(c)(2) - Obstructing or Impeding Any Official Proceeding; 18 U.S.C. § 1752(a)(1), (2), (4), (b)(1)(A) and (b)(1)(B) - Physical violence on restricted grounds, while carrying dangerous weapon, and resulting in significant bodily injury; 40 U.S.C. § 5104(e)(2)(f) - Violent entry and disorderly conduct, act of physical violence on Capitol Grounds; and 18 U.S.C. § 2 - Aiding and Abetting.

On March 15, 2021, federal agents arrested Mr. Tanios at his home in Morgantown and he appeared in the Northern District of West Virginia for an initial hearing. The government filed a motion for detention and, on March 18, 2021, it filed an amended motion for detention. Documents 2 & 17, Case 1:21-MJ-00027-MJA (NDWV). The grounds for detention set forth in the detention motion are the most simple and well worn: "there are no conditions of confinement which will

reasonably assure [the] Defendant's appearance as required [and] the [s]afety of any other person or the community." *Id.* at 2.

On March 17, 2021, a Grand Jury in the United States District Court for the District of Columbia returned an Indictment. Count One charges conspiracy to injury police officers, in violation of 18 U.S.C. § 372. Count Two, Count Three, and Count Four charge assaulting, resisting or impeding officers in violation of U.S.C. §§ 111(a)(1) and (b) and 2. Count Five charges Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). Count Six charges obstructing or impeding any official proceeding, in violation of 18 U.S.C. § 1512(c)(2). Count Seven charges entering and remaining in a restricted building or grounds with a deadly or dangerous weapon and causing significant bodily injury in violation of 18 U.S.C. §§ 1752(a)(1), (b)(1)(A) and (b)(1)(B). Count Eight charges disorderly and disruptive conduct, in violation of 18 U.S.C. §§ 1752(a)(2), (b)(1)(A) and (b)(1)(B). Count Nine charges engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon and causing significant bodily injury, in violation of 18 U.S.C. §§ 1752(a)(4), (b)(1)(A) and (b)(1)(B). Count Ten charges an act of physical violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. §§ 5104(e)(2)(F).

On March 19, 2021, Mr. Tanios filed a response to the motion for detention. Document 22, Case 1:21-MJ-00027-MJA (NDWV). Mr. Tanios asserted that he is not guilty of all charges and he is eager to appear in the U.S. District Court for the District of Columbia, to respond to the charges against him. He requested release from custody on standard conditions of bond, given that he has no history of violence, no prior felony convictions, a local business in Morgantown, West Virginia, a home, a commercial property, three very young children, and a fiancé. Without question, despite the number and nature of the charges, he falls in the category of defendants presumed to be released under the Bail Reform Act.

On March 22, 2021, the parties appeared for a hearing on the motion for detention before U.S. Magistrate Judge, Michael J. Aloi. Over objection, the Government presented a proffer, and several short video clips. Tr. 28-41.[1]

Mr. Tanios, for his part, called six witnesses: (1) Maguy Tanios, his mother, (2) Amanda Plumley, his fiancé and mother of his three children, (3) Shadoe Lowers, a family friend and former employee, (4) Michela Scotto Diluzio, a friend and collaborator in the local restaurant business, (5) Maria Boutros, his sister, and (6) Special Agent Riley Palmertree of the FBI. The first five witnesses testified as to his work ethic, longstanding position in the Morgantown restaurant industry, and role as a supportive father to his children. Tr. 43-72.

SA Palmertree testified as to how law enforcement conducted an investigation to piece together the allegations as set forth in the Government's proffer. Tr. 73-92.

On March 23, 2021, Magistrate Judge Aloi issued a Detention Order, which is the product of false assumptions, unfair interpretations and poor reasoning. *See* Document 28, Case 1:21-MJ-00027-MJA (NDWV).

### III. MEMORANDUM OF LAW

There is a general rule of substantive due process that the government may not detain a person prior to a judgement of guilt in a criminal trial. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This exception of pretrial detention is governed by the Bail Reform Act, 18 U.S.C. § 3142. Still, "[t]he structure of the [bail reform] statute mandates every form of

---

[1] Undersigned counsel ordered the attached transcript of the detention hearing on March 22, 2021, in the Northern District of West Virginia. "Tr." indicates a citation to the transcript of this hearing.

release be considered before detention may be imposed." *United States v. Orta*, 760 F.2d 887, 892 (8th Cir. 1985); *see also United States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004).

Pursuant to the Bail Reform Act, this Court must consider all possible conditions of release, and impose the least restrictive conditions that reasonably assure the defendant will not flee or pose a danger to any other person or the community. A defendant shall be detained pending trial only if the district court "finds that no condition or combination of the conditions will reasonable assure" either (1) "the appearance of the [defendant] as required" or (2) "the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Vasquez-Benitez,* 919 F.3d 546, 550 (D.C. Cir. 2019) ("[i]n common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'").

If the rebuttable presumption under 18 U.S.C. § 3142(e)(2) does not apply, as in the instant case, then, "[w]ith regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonable assure the defendant's presence at the future court proceedings." *Stewart*, 19 F. App'x at 48 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). Accordingly, under the statutory scheme, "it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (quoting *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987)).

The factors the court should consider are listed in the Bail Reform Act: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the person's history and characteristics, including the person's character, physical and mental condition, family ties, employment, financial resources, community ties, drug abuse history, and criminal record; and (4) the danger to the community posed by the person's release. 18 U.S.C. § 3142(g). The

government must prove dangerousness by "clear and convincing" evidence.  18 U.S.C. § 3142(f); *see United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005); *United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988).

Pursuant to 18 U.S.C. §3145(b), if a person is ordered detained by a magistrate or by a person other than a judge of a court having original jurisdiction over the offense and other than a federal appellate court, that person may file with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.  The motion shall be determined promptly.  "When a defendant seeks review of a magistrate judge's order of detention, the district court is bound to review the matter *de novo* and undertake a complete review of the matter for the purpose of arriving at its own 'independent conclusion.'"  *United States v. Williams*, 753 F.2d 329, 331 (4th Cir. 1985).

## IV.  ARGUMENT

Release is warranted in this case.  First, the Government failed to meet its burden, even by a preponderance of the evidence, to show that Mr. Tanios is a risk of flight.  Second, the Government failed to meet its burden to show clear and convincing evidence that Mr. Tanios is a danger to any other person or the community.  Third, in the event that this Court somehow finds the Government -- through its proffer and a sprinkling of short video clips – has met its burden, the analysis mandated by the Bail Reform Act does not end.  The Government still bears the burden of proving to this Court that there are ***no conditions, or combinations of conditions***, which will reasonably assure the appearance of Mr. Tanios and the safety of any other person or the community.  At each step, the Government fails to meet its burden.

**A.  Mr. Tanios does not present a risk of flight.**

The Detention Order determined that Mr. Tanios is not a flight risk. Document 28, Case 1:21-MJ-00027-MJA, at 8. "Ties to the community" means both the community where charges are brought and the community where defendant normally resides. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) ("[i]f it were only the community in which the indictment was brought, a defendant who had deep ties in Boston, for example, might be denied bail if indicted in New Haven."); *United States v. Robinson*, 2010 710 F.Supp.2d 1065, 1070 (D.N. Mariana Is., May 11, 2010) (same). Mr. Tanios has strong ties to Morgantown, West Virginia, which is about three hours away from this Court, in Washington, D.C., where he will stand trial. Mr. Tanios is a U.S. Citizen. Mr. Tanios runs a small business in Morgantown, West Virginia, near the campus of West Virginia University. His business is well known. Mr. Tanios has been a part of the WVU community and local small business community, making a living in the restaurant industry since he moved to West Virginia, in 2006. Mr. Tanios owns a commercial building in Morgantown. He lives in Morgantown with his fiancé and their three young children. Mr. Tanios has no history of nonappearance. Under the circumstances, Mr. Tanios cannot be considered a flight risk.

**B. Mr. Tanios is not a danger to others and the community.**

The Detention Order determined that the Government has established by clear and convincing evidence that Mr. Tanios is a danger to others and the community. Document 28, Case 1:21-MJ-00027-MJA (NDWV), at 8. This is a colossal error. It is an error, as a matter of procedure, because the Detention Order failed to consider all the required factors under 18 U.S.C. § 3142(g). It is an error, as a matter of fact, because the record clearly indicates that Mr. Tanios is an ordinary businessman with a family, no felony convictions, and no history of violence, much less a history of violence against law enforcement officers. Most importantly, the record does not reflect that Mr. Tanios has the capability of dangerousness in the future.

1. **Nature and circumstances of the charged offenses are not determinative of the question of detention and they do not weigh in favor of detention in this case.**

While the Supreme Court has upheld the constitutionality of pretrial detention under the Bail Reform Act on due process grounds, the Court stressed that the statute it was upholding contained important safeguards, including the requirements that defendant be accused of a particularly serious crime and that dangerousness be proved to a neutral judicial officer by clear and convincing evidence. *See Salerno*, 481 U.S. at 747, 750–52, 107 S.Ct. 2095; *cf. United States v. Kills Enemy*, 3 F.3d 1201, 1203 (8th Cir.1993) (contrasting pretrial releasees with convicted persons awaiting sentence, and noting that the latter are "no longer entitled to a presumption of innocence or presumptively entitled to [their] freedom"). "Neither Salerno nor any other case authorizes detaining someone in jail while awaiting trial . . . *based merely on the fact of arrest for a particular crime.*" *United States v. Scott*, 450 F.3d 863, 875 (9th Cir. 2006) (emphasis added). The charge, whatever it may be, is merely an allegation and the Bail Reform Act does nothing to limit the presumption of innocence. 18 U.S.C. § 3142 (j). "Thus, the Supreme Court upheld the constitutionality of a bail system where pretrial defendants could be detained only if the need to detain them was demonstrated on an individualized basis." *Scott*, 450 F.3d at 875.

Here, Mr. Tanios is fully aware that the charged offenses are serious. Likewise, Mr. Tanios is acutely aware that the surrounding circumstances are highly unusual since the offenses allegedly occurred in the context of shocking and virtually unprecedented breach of the U.S. Capitol building while a joint session of the United States Congress convened. At the same time, Mr. Tanios denies all charges. He has done so multiple times and he contends that, based upon the evidence in the record, he is not a threat if released and permitted to remain at home with his family while this case is pending.

In addition, Mr. Tanios wishes to highlight for the Court that this is not a case where -- even as it is alleged -- Mr. Tanios took the lead or personally caused harm to any individual or destroyed property. Mr. Tanios is not a member of an extremist organization, militia or hate group. Mr. Tanios did not coordinate or plan a violent attack. In fact, as stated, Mr. Tanios has no history of violence whatsoever. Mr. Tanios is a family-oriented business owner who traveled to Washington, D.C., to attend what he believed would be an extremely important political rally. It seemed exciting, different, interesting, and an opportunity to express his support for his political party in a meaningful way. Mr. Tanios listened closely to all the speakers. After attending the rally, Mr. Tanios walked to the United States Capitol with the large crowd of people going there.

Upon arrival, Mr. Tanios had no idea that such an incredibly wild riot would develop and, despite being there, he never condoned the violent and chaotic behavior he witnessed. Naturally, as one may imagine, he regrets going down to the U.S. Capitol in the first place. Still, Mr. Tanios never entered the U.S. Capitol Building. Mr. Tanios did not tear down barriers. Mr. Tanios did not punch, kick or hit anyone. Mr. Tanios did not conspire to or assist with an assault on law enforcement officers. Most certainly, Mr. Tanios did not spray any officer with O.C. spray, "bear spray" or any other chemicals. Likewise, Mr. Tanios did not observe Mr. Khater do this either -- if he even did -- as the Government has alleged.

**2. The weight of evidence presented against Mr. Tanios is not strong.**

At the detention hearing, the Government presented very little actual evidence. It presented no witness testimony. The Government presented no physical evidence. The Government presented no statements by Mr. Tanios and no written or recorded statements by the co-defendant, Mr. Khater. Rather, over objection, the Government presented a proffer of what it believes the evidence would demonstrate if presented and a few video clips of Mr. Tanios and Mr. Khater at

the U.S. Capitol.  Other than Mr. Tanios being present, the video clips fail to show much at all in terms of the criminal acts allegedly committed by Mr. Tanios.  The video clips fail to show any intent to harm officers, knowledge that officers would be injured, or any agreement by Mr. Tanios to do harm.  The video clips fail to show Mr. Tanios use any weapon, chemical spray or inflammatory agent.  Furthermore, the video clips fail to show that Mr. Tanios provided Mr. Khater with any item that could be used to injure officers at the Capitol.  This is a far cry from strong evidence and it is the only evidence the Government relied upon.

### 3. The history and characteristics of Mr. Tanios weigh in favor of release.

The Detention Order fails to fully credit Mr. Tanios for a personal history, which completely undercuts the claim that detention is necessary.  Mr. Tanios has never been convicted of a felony.  Mr. Tanios has never previously been accused of violence.  Mr. Tanios does not have reputation for violence.  Mr. Tanios is a dedicated, loving, supportive and family-oriented husband and father.  For fifteen years, Mr. Tanios created, owned and operated several businesses in Morgantown, West Virginia, which served the community, bolstered the local economy, employed many people, and created revenue for the City of Morgantown.  Mr. Tanios is politically minded and has often expressed his political views, but he is not a member of any extremist organization, militia, hate group, or any other organization that supports violence, chaos, anarchy or civil unrest.

The allegations against Mr. Tanios suggest that on a single day Mr. Tanios had a role in offenses committed with a co-defendant, Mr. Khater.  A defendant remains innocent until proven guilty.  Nothing in the Bail Reform Act "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).  Again, Mr. Tanios denies conspiring to injure officers. Mr. Tanios denies aiding and abetting any other person in any crimes.  Mr. Tanios denies assaulting any officer with a dangerous weapon.  Mr. Tanios denies any physical violence on

restricted grounds, while carrying a dangerous weapon, and he denies causing bodily injury. Mr. Tanios asserts his innocence at this time and, given his non-violent and non-criminal history, he does not pose a danger to the community or any other person.

> **4. The risk of danger to the community posed by the release of Mr. Tanios is extremely minimal, if it exists at all.**

The Detention Order found that Mr. Tanios is a danger to others and the community. We object. First, the Detention Order claims that Mr. Tanios engaged in the "premeditation of violence" which includes "the advance purchase of dangerous chemical sprays and Defendant's questioning of a firearms store employee as to whether he could take a firearm or pepper ball gun to Washington, D.C." Document 28, 1:21-MJ-00027-MJA, at 8. This is an absurd interpretation of the proffered evidence. Mr. Tanios did not plan any violence and there is no evidence in the record to support this claim. Mr. Tanios did not take a firearm or pepper ball gun to Washington, D.C. The fact – if it even is a fact – that he asked a federally licensed firearms dealer whether it would be legal to take certain weapons to Washington, D.C., indicates an intent to follow the law, not violate the law or harm others. Similarly, there is no dispute that the purchase of O.C. spray, and certain chemical sprays was legal in West Virginia in January 2021, or that these items are generally intended to be used and are regularly used as items for self-defense in West Virginia, and elsewhere.

The Detention Order indicates that Mr. Tanios is dangerous because, according to the proffered evidence, Mr. Tanios had a "telephone conversation with Mr. Khater during the time in the firearms store to determine what to purchase for the trip to Washington, D.C." *Id*. at 9. Since the Government failed to present a recording of that conversation, and it never presented a written or recorded statement by any witness about this conversation, we contend this is not a reliable fact.

13

If there was a conversation at that time, at all, it is ambiguous and entirely lacking context. It should not be relied upon by any responsible judicial officer to support a finding of dangerousness.

The Detention Order found that Mr. Tanios is dangerous because he was "carrying [] a backpack, shared with Khater, at the event, containing chemical sprays, and Khater attempt[ed] to access the backpack by saying 'Give me that bear s*it' and Defendant responding, 'Hold on, hold on, not yet, not yet … it's still early.'" *Id*. at 9. ***This is false***. Obviously, the backpack was not "shared with" Mr. Khater because Mr. Tanios refused to provide Mr. Khater with the contents of the backpack. Mr. Tanios denied access to Mr. Khater and Mr. Tanios did not give "bear spray" to Mr. Khater or anyone else while on the grounds of the U.S. Capitol. This denial and obvious lack of cooperation with Mr. Khater indicates that Mr. Tanios did not intend to harm law enforcement officers at the U.S. Capitol. It is shocking that the Government, at the hearing, and the Magistrate Judge, in the Detention Order, can so freely put an incredibly incriminating spin on this incomplete conversation. Clearly, at the very least, this interaction between Mr. Tanios and Mr. Khater does not make Mr. Tanios a danger to the exaggerated extent articulated in the Detention Order.

Finally, the Detention Order finds that Mr. Tanios is a danger because of "[t]he spraying of chemical substances directly into the faces of three police officers, who were in the line of duty facing a mob." *Id.* Given the limited record established at the detention hearing, attributing this act to Mr. Tanios is outrageous. Mr. Tanios did not plan to harm officers at the U.S. Capitol. Mr. Tanios did not know officers would be harmed and Mr. Tanios did not intend for officers to be harmed. Mr. Tanios did not approach any officer aggressively and he did not point or spray any canister of chemical spray at anyone that day. Mr. Tanios did not agree to this and he certainly did not assist in this criminal act, if it, in fact, occurred, as alleged.

Accordingly, there is very little evidence to support the conclusion that Mr. Tanios is a danger to others or the community, if any. The Government failed to prove dangerousness by clear and convincing evidence and the Detention Order is woefully inadequate.

### 5. Mr. Tanios does not present an identified and articulable threat to any other person or the community under the guidance *Munchel*.

Critically, there was no evidence considered by the Magistrate Judge as to whether Mr. Tanios presented an identifiable or articulable threat to the community or any other person. The DC Circuit Court of Appeals recently heard argument regarding detention in a case involving a capitol rioter. Although the facts in *United States v. Munchel* are distinguishable from that in this case, the considerations placed on the District Court are instructive. In *Munchel*, the court held that the District Court should consider whether the defendants posed an articulable future threat to the community in view of their conduct on January 6, and the particular circumstances of January 6 on remand. *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, at *7 (D.C. Cir. Mar. 26, 2021).

The facts of this case, when considered in context of the extraordinary conditions of January 6, 2021, show that Mr. Tanios is not a threat. There was no evidence presented at the hearing for bond that showed Mr. Tanios has any experience using bear spray or any OC spray as a weapon against law enforcement or any other person. There is no evidence that Mr. Tanios has the means of using bear spray or any OC spray in the future against law enforcement, or in attempts to disrupt the functioning of government. There is also no evidence that Mr. Tanios would interact with Mr. Khater at all in the future for any purpose, let alone for the purpose of violence or threats to any person or group.

Importantly, there is no identifiable and articulable danger to "act against Congress" in the future, because there is no reasonable explanation of how Mr. Tanios would be capable of doing

15

so now that the specific circumstances of January 6 have passed. Mr. Tanios never entered the Capitol. Mr. Tanios never vandalized any property. Mr. Tanios did not commit any violence. These facts are important to consider the possibility of future danger to the community. As the concurrence stated in *Munchel*, it is not the generalized, backwards- looking assessment of the riot or rioters on January 6, which determines dangerousness. It is the specific, forward-looking assessment of whether a defendant, as individuals currently pose an unmitigable threat to public safety. *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, at *9 (D.C. Cir. Mar. 26, 2021).

### C. There are numerous conditions that this Court can impose to assure Mr. Tanios's appearance and the safety of the community.

Finally, the Government failed to meet its burden of proving that there were no combination of conditions that could be met to assure Mr. Tanios's appearance and the safety of the community. A defendant shall be detained pending trial only if the district court "finds that no condition or combination of the conditions will reasonable assure" either (1) "the appearance of the [defendant] as required" or (2) "the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Vasquez-Benitez,* 919 F.3d 546, 550 (D.C. Cir. 2019) ("In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'").

Although the Government failed to meet their burden, Mr. Tanios agrees to substantial additional conditions for pretrial release and believes that the following restrictions can be imposed to assure this Court of his compliance and concern for the safety of the community. A summary of all the proposed bond conditions is as follows:

1. home detention at his family residence with electronic monitoring;

2. 24-hour monitoring by video-surveillance provided by Mr. Tanios that the United States Probation Officers in this case would be able to have access to the pin to watch the surveillance directly;

3. a restricted list of visitors that will only include individuals such as Mr. Tanio's children, father, mother, in-laws, siblings, attorneys, and clergy;

4. designated visiting hours;

5. visitors will only be allowed to visit Mr. Tanios for four hours per day during designated visiting hours except for his mother, sister, and his attorneys;

6. Mr. Tanios will maintain a visitation log documenting the name of the person visiting, the date, and the length of the visit;

7. Mr. Tanios will not use any smart phones;

8. Mr. Tanios will refrain from being on any social media websites;

9. Mr. Tanios will maintain a call log documenting for each telephone call that he makes the name of the person called, the date, and the length of the call.

10. Mr. Tanios will report daily by telephone to Pretrial Services (or any other schedule the Court deems appropriate).

An analysis of the relevant statutory factors and case law supports pretrial release. Even should the Court conclude, despite substantial evidence to the contrary, that the defendant presents a risk of danger or flight, the foregoing combination of conditions virtually guarantees his appearance as required and the safety of the community by limiting his interactions with others. Vitally, while it is always possible to hypothesize risks, the statutory standard requires only a reasonable assurance that the defendant, if released, will appear. The conditions proposed above, are more than adequate to ensure that Mr. Tanios will not only remain in the Northern District of

West Virginia awaiting his trial in this case, but will also refrain from contacting any potential witnesses.

In addition, in a case such as this one, which will likely involve vast electronic and media discovery, it is critical to undersigned counsel's ability to provide effective assistance, as well as the defendant's ability to meaningfully contribute to his defense, that Mr. Tanios be permitted pretrial release. The Sixth Amendment "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' and who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.'" *Faretta v. California*, 422 U.S. 806, 819 (1975). Given the unique circumstances of this case, undersigned counsel believes Mr. Tanios's exercise of these important Constitutional rights would be materially impaired by his pretrial detention.

## V. CONCLUSION

Mr. Tanios has no history of violence and has never been previously accused of being a danger to others. He has never been convicted of a felony. Mr. Tanios lives in a modest townhome in Morgantown, West Virginia, with his fiancé and their three small children. There are no firearms in the home. He has no history of non-appearance. He has no history of tampering with witnesses. He works 80 hours a week at a restaurant he operates and then comes home to help care for his children. His lifestyle and ordinary environment almost guarantee that no other person will be harmed by Mr. Tanios upon release. What's more, this Court can place Mr. Tanios on home detention, with any combination of additional conditions, which, in essence, creates a jail for him at his home, except while working or meeting with counsel to prepare for trial. Therefore,

this Court should overrule the Detention Order and release Mr. Tanios to his home in Morgantown, West Virginia, while awaiting trial.

                                                  Respectfully submitted,

                                                  **GEORGE PIERRE TANIOS**

By:    /s/ Elizabeth B. Gross
          Elizabeth B. Gross
          WV State Bar No. 11567
          Federal Public Defender Office
          230 West Pike Street, Suite 360
          Clarksburg, West Virginia 26302
          Tel. (304) 622-3823
          Fax. (304) 622-4631
          E-Mail: Beth_gross@fd.org

          s/ L. Richard Walker
          L. Richard Walker
          WV State Bar No. 9580
          Attorney for Defendant Federal
          Public Defender
          230 West Pike Street, Suite 360
          Clarksburg, WV 26302
          Tel. (304) 622-3823
          Fax. (304) 622-4631
          E-Mail: richard_walker@fd.org

**CERTIFICATION OF SERVICE**

I hereby certify that on April 20, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia. A copy will be sent via email to the following:

>**Anthony F. Scarpelli, Esq.**
>**U.S. ATTORNEY'S OFFICE**
>555 Fourth Street, NW
>Washington, DC 20530
>(202) 252-7707
>Fax: (202) 514-8707
>Email: anthony.scarpelli@usdoj.gov


>**Gilead I. Light, Esq.**
>**U.S. ATTORNEY'S OFFICE**
>555 4th Street NW
>Ste 4832
>Washington, DC 20816
>202-252-6880
>Email: gilead.light@usdoj.gov


By:    /s/ Elizabeth B. Gross
       Elizabeth B. Gross
       WV State Bar No. 11567
       Federal Public Defender Office
       230 West Pike Street, Suite 360
       Clarksburg, West Virginia 26302
       Tel. (304) 622-3823
       Fax. (304) 622-4631
       E-Mail: Beth_gross@fd.org