APPEAL,CAP,CAT B

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: <u>1:21–cr–00222–TFH</u>–1

Case title: USA v. KHATER et al

Magistrate judge case number:  1:21–mj–00286–ZMF

Date Filed: 03/17/2021

Assigned to: Judge Thomas F. Hogan

**<u>Defendant (1)</u>**

| | | |
|---|---|---|
| **JULIAN ELIE KHATER** | represented by | **Chad Seigel** |
| | | TACOPINA SEIGEL & DEOREO |
| | | 275 Madison Ave |
| | | Suite Fl 35 |
| | | New York, NY 10016 |
| | | 212–227–8877 |
| | | Fax: 212–619–1028 |
| | | Email: cseigel@tacopinalaw.com |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Joseph Tacopina** |
| | | TACOPINA SEIGEL & DEOREO |
| | | 275 Madison Ave |
| | | Suite Fl 35 |
| | | New York, NY 10016 |
| | | 212–227–8877 |
| | | Fax: 212–619–1028 |
| | | Email: jtacopina@tacopinalaw.com |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Alvin H. Thomas , Jr.** |
| | | LAW OFFICE OF ALVIN H. THOMAS |
| | | JR., PLLC |
| | | 938 E. Swann Creek Road |
| | | 938 E. Swann Creek Road |
| | | #325 |
| | | Fort Washington, MD 20744 |
| | | 301–203–0893 |
| | | Fax: 301–203–0894 |

1

Email: athomas@ahthomaslaw.com
*ATTORNEY TO BE NOTICED*

| **Pending Counts** | **Disposition** |
|---|---|

18 U.S.C. 372; CONSPIRE TO IMPEDE
OR INJURE OFFICER; Conspiracy to
Impede or Injure an Officer
(1)

18 U.S.C. 111(a)(1) and (b), 2;
ASSAULTING/RESISTING/IMPEDING
OFFICERS/EMPLOYEES; Assaulting,
Resisting, or Impeding Certain Officers
Using a Dangerous Weapon and Aiding
and Abetting
(2–4)

18 U.S.C. 231(a)(3); CIVIL DISORDER;
Civil Disorder
(5)

18 U.S.C. 1512(c)(2); TAMPERING
WITH A WITNESS, VICTIM OR
INFORMANT; Obstruction of an Official
Proceeding
(6)

18 U.S.C. 1752(a)(1), (b)(1)(A), and
(b)(1)(B); TEMPORARY RESIDENCE
OF THE PRESIDENT; Entering and
Remaining in a Restricted Building or
Grounds with a Deadly or Dangerous
Weapon and Causing Significant Bodily
Injury
(7)

18 U.S.C. 1752(a)(2), (b)(1)(A) and
(b)(1)(B); TEMPORARY RESIDENCE
OF THE PRESIDENT; Disorderly and
Disruptive Conduct in a Restricted
Building or Grounds with a Deadly or
Dangerous Weapon and Causing
Significant Bodily Injury
(8)

18 U.S.C. 1752(a)(4), (b)(1)(A) and
(b)(1)(B); TEMPORARY RESIDENCE
OF THE PRESIDENT; Engaging in
Physical Violence in a Restricted Building
or Grounds, with a Deadly or Dangerous
Weapon and Causing Significant Bodily
Injury
(9)

40 U.S.C. 5104(e)(2)(F); VIOLENT
ENTRY AND DISORDERLY CONDUCT
ON CAPITOL GROUNDS; Act of
Physical Violence in a Capitol Grounds or
Buildings
(10)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| COMPLAINT in Violation of 18:111(a) and (b), 18:111(a) and (b), 18:111(a) and (b), 18:372, 18:231(a)(3), 18:1512(c)(2), 18:1752(a)(1),(2),(4),(b)(1)(A) and (b)(1)(B), 40:5104(e)(2)(f), and 18:2 | |

---

**Plaintiff**

| **USA** | represented by | **Anthony F. Scarpelli** |
|---|---|---|
| | | U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA |
| | | 555 Fourth Street, NW |
| | | Washington, DC 20530 |
| | | (202) 252–7707 |
| | | Fax: (202) 514–8707 |
| | | Email: anthony.scarpelli@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Assistant U.S. Attorney* |
| | | |
| | | **Gilead I. Light** |
| | | U.S. ATTORNEY'S OFFICE |
| | | 555 4th Street NW |
| | | Ste 4832 |
| | | Washington, DC 20816 |
| | | 202–252–6880 |
| | | Email: gilead.light@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Assistant U.S. Attorney* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/06/2021 | 1 | | SEALED COMPLAINT as to JULIAN ELIE KHATER (1), GEORGE PIERRE TANIOS (2). (Attachments: # 1 Statement of Facts) (bb) [1:21−mj−00286−ZMF] (Entered: 03/08/2021) |
| 03/06/2021 | 3 | | MOTION to Seal Case by USA as to JULIAN ELIE KHATER, GEORGE PIERRE TANIOS. (Attachments: # 1 Text of Proposed Order)(bb) [1:21−mj−00286−ZMF] (Entered: 03/08/2021) |
| 03/06/2021 | 4 | | ORDER granting 3 Motion to Seal Case as to JULIAN ELIE KHATER (1), GEORGE PIERRE TANIOS (2). Signed by Magistrate Judge Zia M. Faruqui on 3/6/2021. (bb) (Main Document 4 replaced on 3/15/2021) (bb). [1:21−mj−00286−ZMF] (Entered: 03/08/2021) |
| 03/14/2021 | 5 | | Arrest Warrant Returned Executed on 3/14/2021 in Newark, NJ as to JULIAN ELIE KHATER. (bb) [1:21−mj−00286−ZMF] (Entered: 03/15/2021) |
| 03/14/2021 | | | Case unsealed as to JULIAN ELIE KHATER (bb) [1:21−mj−00286−ZMF] (Entered: 03/15/2021) |
| 03/14/2021 | | | Arrest of JULIAN ELIE KHATER in U.S. District Court for the District of New Jersey. (zltp) [1:21−mj−00286−ZMF] (Entered: 03/18/2021) |
| 03/15/2021 | 7 | | Rule 5(c)(3) Documents Received as to JULIAN ELIE KHATER from U.S. District Court for the District of New Jersey Case Number 2:21−mj−13070−LDW (zltp) [1:21−mj−00286−ZMF] (Entered: 03/18/2021) |
| 03/17/2021 | 8 | | INDICTMENT as to JULIAN ELIE KHATER (1) count(s) 1, 2−4, 5, 6, 7, 8, 9, 10, GEORGE PIERRE TANIOS (2) count(s) 1, 2−4, 5, 6, 7, 8, 9, 10. (zltp) (Entered: 03/18/2021) |
| 04/09/2021 | | | ORAL MOTION for Speedy Trial Waiver by USA as to JULIAN ELIE KHATER (1). (zpt) (Entered: 04/09/2021) |
| 04/09/2021 | | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: VTC Initial Appearance/Arraignment as to JULIAN ELIE KHATER (1) Count 1,2−4,5,6,7,8,9,10 held on 4/9/2021. Not Guilty Plea entered by JULIAN ELIE KHATER (1) Count as to all counts. Defendant expresses intent to seek and schedule a detention hearing at a later date. Oral Motion by the Government for Speedy Trial Waiver as to JULIAN ELIE KHATER (1) Heard and Granted. Time between 4/9/2021 and 4/13/2021 (4 Days) shall be excluded from calculation under the Speedy Trial Act in the interest of justice X−T. Status Hearing set for 4/13/2021 at 10:30 AM in Telephonic/VTC before Judge Thomas F. Hogan. Bond Status of Defendant: Defendant Remains Committed; Court Reporter: FTR−Gold FTR Time Frame: CTRM 6 [2:24:52−2:34:13]; Defense Attorney: Chad Seigel, Joe Tacopina, and Alvin Thomas; US Attorney: Gilead Light; Pretrial Officer: Christine Schuck; (zpt) (Entered: 04/09/2021) |
| 04/09/2021 | | | MINUTE ORDER as to JULIAN ELIE KHATER (1). As required by Rule 5(f), the United States is ordered to produce all exculpatory evidence to the defendant pursuant to Brady v. Maryland and its progeny. Not doing so in a timely manner may result in sanctions, including exclusion of evidence, adverse jury instructions, dismissal of charges and contempt proceedings. Signed by Magistrate Judge G. Michael Harvey on 4/9/2021. (zpt) (Entered: 04/09/2021) |

| 04/12/2021 | | | Set/Reset Hearings as to JULIAN ELIE KHATER(1), GEORGE PIERRE TANIOS(2): Status Conference set for 4/13/2021 at 10:30 AM by VTC before Judge Thomas F. Hogan. (hs) (Entered: 04/12/2021) |
|---|---|---|---|
| 04/13/2021 | 14 | | MOTION for Leave to Appear Pro Hac Vice Alvin Thomas *Joseph Tacopina Joseph Tacopina* Filing fee $ 100, receipt number ADCDC−8369672. Fee Status: Fee Paid. by JULIAN ELIE KHATER. (Thomas, Alvin) (Entered: 04/13/2021) |
| 04/13/2021 | 15 | | MOTION for Leave to Appear Pro Hac Vice Chad Seigel Filing fee $ 100, receipt number ADCDC−8369710. Fee Status: Fee Paid. by JULIAN ELIE KHATER. (Thomas, Alvin) (Entered: 04/13/2021) |
| 04/13/2021 | | | MINUTE ORDER: GRANTING 14 Motion for Leave for Joseph Tacopina to Appear Pro Hac Vice. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a). Click for Instructions** as to JULIAN ELIE KHATER (1). Signed by Judge Thomas F. Hogan on April 13, 2021. (KDD). (Entered: 04/13/2021) |
| 04/13/2021 | | | MINUTE ORDER: GRANTING 15 Motion for Leave for Chad Seigel to Appear Pro Hac Vice. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a). Click for Instructions** as to JULIAN ELIE KHATER (1). Signed by Judge Thomas F. Hogan on April 13, 2021. (KDD). (Entered: 04/13/2021) |
| 04/13/2021 | | | Minute Entry for proceedings held before Judge Thomas F. Hogan: Status Conference as to JULIAN ELIE KHATER(1) held on 4/13/2021. Defendant's presence waived for this hearing. Speedy Trial Time Excluded 4/13/2021 − 4/27/2021(XT). Bond Hearing set for 4/27/2021 at 09:30 AM by VTC before Judge Thomas F. Hogan. Bond Status of Defendant: Committed/presence waived; Court Reporter: Lisa Moreira; Defense Attorney: Alvin Thomas, Jr./Joseph Tacopina/Chad Seigel; US Attorney: Anthony Scarpelli/Gilead Little; (hs) (Entered: 04/13/2021) |
| 04/14/2021 | 16 | | NOTICE OF ATTORNEY APPEARANCE: Chad Seigel appearing for JULIAN ELIE KHATER (Seigel, Chad) (Entered: 04/14/2021) |
| 04/14/2021 | 17 | | NOTICE OF ATTORNEY APPEARANCE: Joseph Tacopina appearing for JULIAN ELIE KHATER (Tacopina, Joseph) (Entered: 04/14/2021) |
| 04/20/2021 | 18 | | MOTION for Release from Custody by JULIAN ELIE KHATER. (Attachments: # 1 Memorandum in Support of defendant's motion for pre−trial release, # 2 Declaration of attorney Chad D. Seigel, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K, # 14 Exhibit L, # 15 Exhibit M, # 16 Exhibit N, # 17 Exhibit O, # 18 Exhibit P, # 19 Exhibit Q, # 20 Exhibit R, # 21 Exhibit S)(Seigel, Chad) (Entered: 04/20/2021) |
| 04/20/2021 | 19 | | MOTION to Review *Order of Detention* by GEORGE PIERRE TANIOS as to JULIAN ELIE KHATER, GEORGE PIERRE TANIOS. (Attachments: # 1 Exhibit Transcript)(Gross, Elizabeth) (Main Document 19 replaced on 4/21/2021) (zltp). (Entered: 04/20/2021) |
| 04/21/2021 | | | MINUTE ORDER as to JULIAN ELIE KHATER(1), GEORGE PIERRE TANIOS(2). In preparation for the hearing on 18 Defendant Khater's Motion to |

5

| | | | |
|---|---|---|---|
| | | | Release from Custody and <u>19</u> Defendant Tanios' Motion to Review Order of Detention, the parties shall file a joint notice by Friday, April 23, 2021, indicating the following: 1) the number and identities of any witnesses who will testify; and 2) the evidence that the parties will rely upon, including video footage, if any. Signed by Judge Thomas F. Hogan on 4/21/2021. (hs) (Entered: 04/21/2021) |
| 04/23/2021 | <u>20</u> | | NOTICE *OF THE PARTIES* by USA as to JULIAN ELIE KHATER, GEORGE PIERRE TANIOS (Light, Gilead) (Entered: 04/23/2021) |
| 04/26/2021 | | | Set/Reset Hearings as to JULIAN ELIE KHATER(1), GEORGE PIERRE TANIOS(2): Bond Hearing reset for 4/27/2021 09:00 AM by VTC before Judge Thomas F. Hogan. (hs) (Entered: 04/26/2021) |
| 04/26/2021 | <u>21</u> | | Memorandum in Opposition by USA as to JULIAN ELIE KHATER, GEORGE PIERRE TANIOS re <u>18</u> MOTION for Release from Custody , <u>19</u> MOTION to Review *Order of Detention* (Light, Gilead) (Entered: 04/26/2021) |
| 04/26/2021 | <u>22</u> | | Unopposed MOTION for Protective Order *Governing Discovery* by USA as to JULIAN ELIE KHATER, GEORGE PIERRE TANIOS. (Attachments: # <u>1</u> Text of Proposed Order)(Light, Gilead) (Entered: 04/26/2021) |
| 04/27/2021 | <u>23</u> | | PROTECTIVE ORDER setting forth procedures for handling confidential material; allowing designated material to be filed under seal as to JULIAN ELIE KHATER, GEORGE PIERRE TANIOS. Signed by Judge Thomas F. Hogan on 4/27/2021. (hs) (Entered: 04/27/2021) |
| 04/27/2021 | | | Minute Entry for proceedings held before Judge Thomas F. Hogan: Bond Hearing as to JULIAN ELIE KHATER(1), GEORGE PIERRE TANIOS(2) held on 4/27/2021. A further Bond Hearing/Oral Argument is set for 5/6/2021 at 09:00 AM by VTC before Judge Thomas F. Hogan. Bond Status of Defendants: Committed/Defendants present via video; Court Reporter: Nancy Meyer; Defense Attorney: Alvin Thomas/Joseph Tacopina/Chad Seigel/Elizabeth Gross/Linn Walker; US Attorney: Anthony Scarpelli/Gilead Little; Pretrial Officer: Christine Schuck; (hs) (Entered: 04/27/2021) |
| 04/27/2021 | | | ENTERED IN ERROR***Minute Entry for proceedings held before Judge Thomas F. Hogan: Arraignment as to JULIAN ELIE KHATER (1) held on 4/27/2021. A Not Guilty Plea is entered as to Counts 1–10 of rhe Indictment. Bond Status of Defendant: Committed/Defendant present by video; Court Reporter: Lisa Edwards; Defense Attorney: Joseph Tacopina/Chad Seigel; US Attorney: Anthony Scarpelli/Gilead Little; (hs) Modified on 5/13/2021 (entry entered in wrong case) (hs). (Entered: 05/13/2021) |
| 04/28/2021 | | | Set/Reset Hearings as to JULIAN ELIE KHATER(1), GEORGE PIERRE TANIOS(2): Motion Hearing reset for 5/11/2021 at 09:00 AM VTC before Judge Thomas F. Hogan. (hs) (Entered: 04/28/2021) |
| 05/06/2021 | | | Minute Entry for proceedings held before Judge Thomas F. Hogan: Bond Hearing/Oral Argument as to JULIAN ELIE KHATER(1), GEORGE PIERRE TANIOS(2) held on 5/6/2021. Oral Rulings/Opinions issued denying <u>18</u> MOTION for Release from Custody and <u>19</u> MOTION to Review Order of Detention as to JULIAN ELIE KHATER, GEORGE PIERRE TANIOS. Speedy Trial Time Excluded 5/11/2021 – 6/16/2021(XT). Status Conference set for 6/16/2021 at 10:00 AM by VTC before Judge Thomas F. Hogan. Bond Status of |

| | | | |
|---|---|---|---|
| | | | Defendants: Committed/Defendants present via video; Court Reporter: Bryan Wayne; Defense Attorney: Joseph Tacopina/Chad Seigel; US Attorney: Anthony Scarpelli/Gilead Little; Pretrial Officer: Christine Schuck;Witnesses: Scott Biddle (hs) (Entered: 05/11/2021) |
| 05/12/2021 | 25 | | ORDER. denying 18 Motion for Release from Custody as to JULIAN ELIE KHATER (1); denying 19 Motion for Review as to GEORGE PIERRE TANIOS (2). Signed by Judge Thomas F. Hogan on 5/12/2021. (hs) (Entered: 05/12/2021) |
| 05/18/2021 | 26 | | TRANSCRIPT OF 5/11/21 BOND HEARING in case as to JULIAN ELIE KHATER, GEORGE PIERRE TANIOS before Judge Thomas F. Hogan held on May 11, 2021; Page Numbers: 1–64. Date of Issuance: 5/18/2021. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form at www.dcd.uscourts.gov. For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 6/8/2021. Redacted Transcript Deadline set for 6/18/2021. Release of Transcript Restriction set for 8/16/2021.(Wayne, Bryan) (Entered: 05/18/2021) |
| 05/24/2021 | 27 | | TRANSCRIPT OF PROCEEDINGS in case as to JULIAN ELIE KHATER, GEORGE PIERRE TANIOS before Judge Thomas F. Hogan held on 04/27/2021. Page Numbers: 1–82. Date of Issuance: 05/20/2021. Transcribing Court Reporter: Nancy J. Meyer. Telephone Number: 202–354–3118. Transcripts may be ordered by submitting the Transcript Order Form For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public te rminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have 21 days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 6/14/2021. Redacted Transcript Deadline set for 6/24/2021. Release of Transcript Restriction set for 8/22/2021.(Meyer, Nancy) (Entered: 05/24/2021) |
| 05/25/2021 | 28 | | NOTICE OF APPEAL – Final Judgment by JULIAN ELIE KHATER re 25 Order on Motion for Review, Order on Motion for Release from Custody. Filing |

| | | | fee $ 505, receipt number ADCDC−8480797. Fee Status: Fee Paid. Parties have been notified. (Seigel, Chad) (Entered: 05/25/2021) |
| --- | --- | --- | --- |

# United States District Court for the District of Columbia

UNITED STATES OF AMERICA )
)
vs. ) Criminal No. <u>21-CR-00222 (TFH)</u>
)
<u>JULIAN ELIE KHATER</u> )

## NOTICE OF APPEAL

Name and address of appellant:

Julian Elie Khater
Correctional Treatment Facility
1901 E St., S.E.
Washington, D.C.  20003

Name and address of appellant's attorney:

Joseph Tacopina, Esq.
Chad Seigel, Esq.
Tacopina Seigel & DeOreo
275 Madison Avenue, 35th Floor
New York, N.Y. 10016
Tel: (212) 227-8877

Offense:   18 U.S.C. 372; 18 U.S.C. 111; 18 U.S.C. 231(a)(3); 18 USC 1512(c)(2); 18 U.S.C. 1752(a), 40 U.S.C. 5104(e)(2)(F)

Concise statement of judgment or order, giving date, and any sentence:

05/12/2021: Order of Detention Pending Trial.

Name and institution where now confined, if not on bail:   Correctional Treatment Facility, 1901 E St., S.E., Washington, D.C.  20003

    I, the above named appellant, hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the above-stated judgment.

<u>May 25, 2021</u>
DATE

/s/ Julian Elie Khater
APPELLANT
/s/ Joseph Tacopina
ATTORNEY FOR APPELLANT

GOVT. APPEAL, NO FEE ☐
CJA, NO FEE ☐
PAID USDC FEE ☐
PAID USCA FEE ☐
Does counsel wish to appear on appeal?           YES ☑   NO ☐
Has counsel ordered transcripts?                 YES ☐   NO ☑
Is this appeal pursuant to the 1984 Sentencing Reform Act?  YES ☑   NO ☐

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal Case No. 21-00222 (TFH)** |
| | ) | |
| **GEORGE TANIOS and** | ) | |
| **JULIAN KHATER,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

Defendants Julian Khater and George Tanios seek to be released on bond pending trial. *See* ECF Nos. 18 & 19. The Government opposes both motions. *See* ECF No. 21. Having considered all materials submitted to the Court, the evidence, arguments by counsel, and the factors set forth in 18 U.S.C. § 3142(g), the Court finds that the Defendants would pose a danger to the community if released.

Pursuant to 18 U.S.C. § 3142(e), the Court finds that no condition or combination of conditions of release will reasonably assure the safety of the community. For these reasons and for all of the reasons stated on the record in the bench opinion dictated at the May 11, 2021 hearing on the Defendants' motions, it is hereby

**ORDERED** that Defendant Khater's Motion for Release from Custody [ECF No. 18] and Defendant Tanios' Motion to Review Order of Detention [ECF No. 19] are **DENIED**.

**SO ORDERED.**

Dated: May 12, 2021

THOMAS F. HOGAN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------X

UNITED STATES OF AMERICA

                                    **NOTICE OF MOTION**

– against –

JULIAN ELIE KHATER,                       **Docket No. 21-CR-00222 (TFH)**

          Defendant.

-------------------------------------------------------X

PLEASE TAKE NOTICE, that upon the annexed declaration of Chad Seigel, Esq., attorney for

defendant Julian Khater, dated April 20, 2021, the accompanying memorandum of law, and upon

all papers and proceedings heretofore had herein, the undersigned will move this Court before the

Hon. Thomas F. Hogan, United States District Judge, at the United States District Court, 333

Constitution Ave. NW, Washington, D.C. 20001, at a date and time to be fixed by the Court, for

an Order:

      Granting defendant Julian Khater release pending trial, pursuant to 18 U.S.C. § 3142,

together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       April 20, 2021

                                    YOURS, ETC.

                                    JOSEPH TACOPINA, ESQ.
                                    CHAD SEIGEL, ESQ.
                                    Tacopina Seigel & DeOreo
                                    Attorneys for Defendant *Julian Khater*
                                    275 Madison Avenue, 35th Floor
                                    New York, N.Y. 10016
                                    Tel: (212) 227-8877

ALVIN H. THOMAS , JR., ESQ.
Law Office of Alvin H. Thomas Jr., PLLC
Attorney for Defendant *Julian Khater*
938 E. Swann Creek Road, #325
Fort Washington, MD. 20744
Tel: (301) 203-0893

TO:   Clerk of the Court
United States District Court
for the District of Columbia
United States District Court
333 Constitution Ave. NW
Washington, D.C. 20001

Hon. Thomas F. Hogan
United States District Court
for the District of Columbia
United States District Court
333 Constitution Ave. NW
Washington, D.C. 20001

AUSA Anthony F. Scarpelli
AUSA Gilead I. Light
U.S. Attorney's Office
for the District of Columbia
555 Fourth Street, NW
Washington, D.C. 20530

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------X

UNITED STATES OF AMERICA

                                    **Docket No. 21-CR-00222 (TFH)**

   – against –

JULIAN ELIE KHATER,

       Defendant.

-------------------------------------------------------X

## DEFENDANT JULIAN KHATER'S MEMORANDUM OF LAW IN SUPPORT OF HIS PRE-TRIAL RELEASE

Joseph Tacopina, Esq.
Chad Seigel, Esq.
Tacopina Seigel & DeOreo
Attorneys for Defendant *Julian Khater*
275 Madison Avenue, 35th Floor
New York, N.Y. 10016
Tel: (212) 227-8877

Alvin H. Thomas , Jr., Esq.
Law Office of Alvin H. Thomas Jr., PLLC
Attorney for Defendant *Julian Khater*
938 E. Swann Creek Road, #325
Fort Washington, MD. 20744
Tel: (301) 203-0893

## **TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      The Court Should Grant Defendant Julian Khater's Release Pending Trial. . . . . . . . . . . 2

         A.     The Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

         B.     Julian Khater Does Not Pose a Danger to the Community. . . . . . . . . . . . . 4

               1.     The History and Characteristics of the Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

               2.     The Weight of the Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

               3.     The Nature and Circumstances of the Offense Charged. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

               4.     The Nature and Circumstances of the Danger to Any Person or the Community That Would Be Posed by the Person's Release. . . . . . . . . . . . . . . . . . . . . . . 17

         C.     Julian Khater Does Not Pose a Risk of Flight . . . . . . . . . . . . . . . . . . . . . 18

         D.     The Prospective Sureties and Collateral . . . . . . . . . . . . . . . . . . . . . . . . . 18

         E.     Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGES**

*United States v. Ali*, 965 F.Supp.2d 139 (D.D.C. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Munchel*, 2021 WL 1149196 (D.C. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . 3, 16, 17

*United States v. Patriaca*, 948 F.2d 789 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

*United States v. Salerno,* 481 U.S. 739 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

*United States v. Singleton*, 182 F.3d 7 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Smith*, 79 F.3d 1208, 1209  (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Taylor*, 289 F.Supp.3d 55 (D.D.C. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*United States v. Vasquez-Benitez*, 919 F.3d 546 (D.C. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . 3


**STATUTES**                                                       **PAGES**

18 U.S.C. § 111  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 3142  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 21

ii

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------X

UNITED STATES OF AMERICA

                                                **Docket No. 21-CR-00222 (TFH)**

    – against –

JULIAN ELIE KHATER,

        Defendant.

-------------------------------------------------------X

### DEFENDANT JULIAN KHATER'S MEMORANDUM OF LAW IN SUPPORT OF HIS PRE-TRIAL RELEASE

### PRELIMINARY STATEMENT

At the outset, the defense recognizes that the surrounding circumstances of this case evoke a great deal of emotion. It is hard not to think of the events that unfolded on January 6th and not have a visceral reaction – particularly, as rioters entered the Capitol Building by breaking windows and ramming open doors.

But Julian Khater was not one of them. He never entered the Capitol Building, never sought to threaten members of Congress, and never intended to forcibly interfere with the peaceful transfer of power. Instead, the act attributed to him was a limited and isolated one, that never transgressed the barrier that lay directly before him. Moreover, according to the detailed criminal complaint that was filed in this case [Dkt. No. 1], that singular act – of using a bear spray canister which he personally did not purchase or carry to the Capitol – occurred as much as eight feet away from officers, only after he emphatically yelled out that he, himself, was just sprayed.

Clearly, the circumstances giving rise to this case are extraordinarily unique. In accord with that fact, as discussed below, many defendants charged with violent and/or aggressive behavior on January 6th have been released pending trial.

These factors, coupled with the upstanding history and characteristics of Mr. Khater, who has absolutely no prior contact with the criminal justice system, support his pre-trial release. In fact, any notion that he poses a risk of flight or danger to the community is undercut by the dozen and a-half letters attached to this submission. In those letters, people who know Mr. Khater best extol his exemplary background and character.

Accordingly, for the reasons further detailed below, the defense requests that he be released on a substantial bail package with stringent pre-trial conditions, including: (1) a $15 million bond (a) secured by five properties comprising approximately $1.5 million in equity and (b) guaranteed by 16 family members who will co-sign as financially responsible sureties; (2) home detention with electronic monitoring; and (3) a condition that Mr. Khater surrender any and all passports in his possession.

## ARGUMENT

### THE COURT SHOULD GRANT DEFENDANT JULIAN KHATER'S RELEASE PENDING TRIAL

#### A.      The Applicable Law

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). Thus, "[d]etention until trial is relatively difficult to impose," *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999), and "the default position of the law . . . is that a defendant should be released pending trial." *United States v. Taylor*, 289 F.Supp.3d 55, 62 (D.D.C. 2018) (*quoting United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

In light of the foregoing, to detain a defendant, the Government must establish by clear and convincing evidence that there exists absolutely "*no* condition or combination of conditions [which]

will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1) (emphasis added). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In other words, to warrant the defendant's pre-trial detention, the Government must prove that such drastic recourse is the *only* means by which to reasonably assure his appearance and the safety of the community. *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

Furthermore, with regard to the "danger to the community" prong, the evidence must prove that the defendant actually poses such a danger, not that he does so in theory. *United States v. Patriaca*, 948 F.2d 789 (1st Cir. 1991). And, with regard to that consideration, as the Court of Appeals recently observed in *United States v. Munchel*, 2021 WL 1149196, at *7 (D.C. Cir. 2021), "[t]he threat must [ ] be considered in context," as well as the defendant's "means of [carrying out that threat] in the future." Accordingly, "[w]hether a defendant poses a particular threat depends on the nature of the threat identified and the resources and capabilities of the defendant." *Id.*, at *7.

In assessing whether pre-trial detention is warranted for dangerousness, district courts consider four statutory factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and circumstances of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4).

Importantly, throughout this proceeding, the Government bears the burden of both production and persuasion, as there is no presumption that detention is necessary.[1] To the contrary, as noted

---

[1] None of the criteria triggering a "rebuttable presumption" in favor of detention exist in this case. *See* 18 U.S.C. § 3142 (e)(3)(A)–(E).

3

above, "the default position of the law . . . is that a defendant *should be released* pending trial"
*Taylor*, 289 F.Supp.3d at 62 (emphasis added). And that presumption may only be overcome if the
Government can carry its ultimate burden of showing that no conditions whatsoever can be imposed
to reasonably assure the defendant's appearance and the safety of the community. As explained in
*United States v. Ali*,

> the government retains the ultimate burden of persuasion by clear and
> convincing evidence that the defendant presents a danger to the community,
> and by the lesser standard of a preponderance of the evidence that the
> defendant presents a risk of flight.

965 F.Supp.2d 139, 147 (D.D.C. 2013) (internal quotations, ellipses, and brackets omitted).

For the reasons set forth below, the Government cannot carry its burden of proving that the
substantial bail package available will not reasonably assure the safety of the community or the
defendant's appearance at all future proceedings. And that is particularly true in light of the statutory
bail factors to be considered.

**B.      Julian Khater Does Not Pose a Danger to the Community**

A consideration of the relevant factors under 18 U.S.C. § 3142(g) demonstrates by clear and
convincing evidence that detention is not necessary to protect the community from Julian Khater.

**1.      The History and Characteristics of the Defendant**

Julian Khater is an American citizen who was born in this country. And at age 32, he has
never before had any contact with the criminal justice system. He has no prior arrests, because he
does not have a criminal disposition. To the contrary, this alleged offense is an anomaly in an
otherwise law-abiding life.

4

By way of background, Mr. Khater – who hails from a supportive and close-knit family – is one of four sons born to the previous marriage of Elie Khater and Eleanor Fox. Both his father, mother, and siblings are all hard-working and productive members of society. And the same holds true for Mr. Khater, who graduated from Fairleigh Dickinson University with a Bachelor's degree in Business Administration and Management in 2011. Thereafter, he secured full-time employment as a financial sales consultant for PNC Bank, where he remained until taking a position in 2016, as an event planner for Topgolf, a sports entertainment company. Then, in 2018, he started working for Frutta Bowls, a healthfood café, which he managed and co-owned with his family. And Mr. Khater continued to work at that business until May 2020, when the pandemic forced the business to shutter its doors. As a result, Mr. Khater was living with his father from then until the date of his arrest.

As his history readily reveals, Mr. Khater has worked hard to make something of himself, living a law-abiding life marked by education and gainful employment.

In accord with his unblemished history, unlike others associated with the events of January 6th, Mr. Khater is not, nor has ever been, part of some far-right, neo-fascist organization that promotes and engages in political violence. In fact, separate and apart from the Government's present accusation, there is no question that Mr. Khater has never participated in a single act of violence. And that is because Mr. Khater is not inherently a violent or aggressive person. To the contrary, he is a kind and compassionate person, as evidenced by an outpouring of letters written on his behalf.

All in all, a dozen and a-half people who know Julian Khater best have submitted letters in support of his release, which are annexed hereto as Exhibits A through R. In their letters, these

5

people – comprising family members, a family friend, and a former coworker – collectively attest

to all of the information detailed above regarding Mr. Khater's upstanding history and

characteristics. For instance, Mr. Khater's former co-worker at PNC Bank, Maggie Dawoud, states:

> ....I was a coworker of Julian's at PNC Bank, Somerset, New Jersey from
> 2015 to 2016. Julian was the nicest and most conscientious person to work
> with. He learned everything in record time and never missed an opportunity
> to better himself within our branch. He was always upbeat and humorous, and
> whatever he was tasked with he would accomplish with good grace and
> efficiency. I was shocked to see that the media were portraying him to be
> violent or a trouble maker! This is not the Julian I knew and worked with! He
> was such a quiet and shy person! He was always polite and courteous to
> customers and all who worked with him. As far as I'm concerned, Julian
> doesn't have the mildest inkling of a temper! I have no doubt that whatever
> has been leveled against him is a mistake and my thoughts and prayers are
> with him and his family. I would work with Julian again in a heartbeat!
> **[Exhibit A]**.

Mr. Khater's work ethic and positive nature are attributes that were undoubtedly instilled in

him by his parents. His mother, Eleanor Fox, explains:

> Julian is my second of four sons. My first, third and fourth were all little
> fireballs. Julian was always the quiet one, the sweet one; as my father Dr.
> Robin Fox would say, "the little elves brought Julian!" He was the one to
> hold the younger ones' hands; he would not go and play with the other
> children in order to stay behind and play with his younger cousins who
> couldn't go off with the older kids.... Julian has never been in trouble, has
> never caused trouble, and has never given me a sleepless night.
>
> I was raised in a family of intellectuals and Liberals. My father, Dr Robin
> Fox, founded the Anthropology department at Rutgers University in 1969. He
> is the author of over 30 books on the subject and was inducted into the
> National Academy of Sciences. My mother was university educated and we
> have lived in the US since 1969. I also attended Rutgers University. My
> sisters are both anthropologists, my younger sister Dr. Anne Fox has a PHD
> in the subject, and my older sister, Kate Fox, is a renowned author. My son
> Julian was raised to study, work hard, and espouse a liberality of ideas and
> cultures.
>
> \*          \*          \*          \*

Julian was always easy as a child, and continued that way through school and college. [He] went on to gain a Bachelor's degree from Fairleigh Dickinson in Business and Marketing. His father and I raised our boys to respect teachers, and all of his teachers' comments were how polite and respectful he was. Our home was one of laughter and discipline, and my boys always came to me with their problems. Julian wanted to become a police officer. I worried about that, but he felt a strong sense of community for where we lived in New Jersey and had friends who had joined the police force. His career took different paths, but I was the most shocked when the media reports came out that said that Julian had supposedly attacked an officer!! He wanted to BE an officer! **[Exhibit B]**.

Julian's Khater's father, Elie Khater, echoes his mother's sentiments, while expounding upon his higher education and gainful work history:

I always strived and worked hard to raise a good family. I· brought up my four sons to be productive members of society. I instilled in them good values, teaching them to be caring and respectful of others.

They all attended college, and Julian in particular always kept busy studying and working. He attended Raritan Valley College where he earned his Associates Degree in Business (2007-2009). He then attended Fairleigh Dickinson University from 2009 to 2011 where he earned his Bachelor's Degree in Business Administration and Management. While Julian attended college he always was employed. He worked at Peter's Liquors in New Brunswick from 2007 to 2012. He also worked as bar manager at Panico's Restaurant from 2011-2016, and from 2014 to 2016 as a financial sales consultant at PNC Bank in Somerset, New Jersey. From December 2016 to January 2018, he worked as an event ambassador and bartender at Top Golf in Edison, New Jersey. From January 2018 to January 2019 he managed and co- owned Frutta Bowls in Chapel Hill, North Carolina. Then from January 2019 to May 2020 he ran the Frutta Bowls in State college, Pennsylvania. He has worked and studied continuously since he was 17.

Julian always worked in the service industry. He was always well-liked by everyone and loved by his customers. He loved people and people loved him. Julian is a loving, caring, quiet and gentle human being.... Julian is always respectful and considerate of others, and he has never ever harmed a living being in his entire life. Julian always loved and cherished law enforcement (police, fire fighters, army etc.).  Anyone who served our country in any capacity was his hero. In fact, one of his ambitions was to join the Sherriff's Department in Franklin Township, NJ.

7

Julian always kept busy with studies and work and was never involved in anything else. I was shocked and devastated to learn of his arrest in connection with the events of January 6th. **[Exhibit C]**.

Mr. Khater's three brothers all share similar accounts regarding his kind and gentle spirit, his

unblemished history, and the aberrational nature of this allegation. First, his older brother, Michael

Khater, conveys:

Julian was the quiet, sweet, gentle, shy, smiling, cheerful child that all parents wanted their kids to be friends with.... These are some of many reasons why I chose Julian to be the Godfather of my firstborn son. He is dependable, reliable, well-rounded, absolutely fantastic with my kids, and, most of all, calm, considerate, gentle, and *ALWAYS* nice. Julian would never hurt a fly. At least, in the 32 years he's been alive, I haven't seen it or even thought it could be possible. The thought of Julian planning or executing anything detrimental to himself or to others is simply inconceivable. When we would go out to eat together, sometimes after a long day at work, Julian couldn't even plan where and what to have for dinner, let alone plan anything else. He was a work-to-home, home-to work type of a person, always.

While I understand the dark cloud hanging above this issue, I am writing to assure you that Julian is not the person he is being painted out to be. He is sweet, gentle, calm, and would never hurt anything or anyone, ever. His academic and entrepreneurial success, combined with his complete lack of any history of anything negative whatsoever, are testament to his character.... [Exhibit D].

Michael Khater's high opinion of Julian Khater is held equally by their younger brother,

Christopher Khater, who states:

Julian was always a funny, loving and caring older brother to me. He was always there when I needed him, and had my back through all of the ups and downs I have been through. Julian is a very friendly person and is always looking to crack jokes, go to events, and have a good time with his friends and family. I know my brother is not capable of intentionally harming anyone or being a part of any type of violence whatsoever. All of his friends, family, and co-workers can attest to his joking and kind-hearted nature.

When I heard of my brother's arrest I was in absolute shock, and the allegations made against him and the smear stories circulating of him in the

8

media are an absolute misrepresentation of him and his character. My brother does have his beliefs and opinions, but would never take part in violent actions in order to voice his opinions. These stories and allegations truly do not represent my brother, our family, or his character at all. **[Exhibit E]**.

John Khater, Julian's remaining brother, 13 months his junior, confirms the foregoing:

My brother Julian is not the person portrayed in the news. The person I have had to read about is the opposite of my brother. He was always kind and protective of me, and I am sure I can speak for of all his siblings, cousins, and friends on that matter. He has never been an activist for anything. He had never attended a rally before. He is quiet and shy. He never even raises his voice. He is the kindest to children, and the chosen Godfather of many, many of our family's young in the next generation.

Julian has only ever been a caring, funny, thoughtful, compassionate, empathetic and protective brother. I cannot believe what is being said and circulated about him. This is not who Julian is in any way, shape, or form. **[Exhibit F]**.

Because violence of any sort is so antithetical to his nature, Mr. Khater's close family friend, Alissa Latner, a councilwoman in the borough of Closter, New Jersey, was dumbstruck by the instant accusation:

I always thought of Julian as a shy, quiet, gentle boy. He was always well behaved, considerate of others, attentive to the younger children, and a helper around the house. Of course I was completely shocked when I heard about his recent arrest as well as the idea of him being involved in anything violent, which totally defies the young man I have known him to be. I merely would like to attest to his good character, and that ... I find it very hard to accept what he is being accused of, as it truly defies the Julian that I know. **[Exhibit G]**.

As referenced previously, Julian Khater is part of an extraordinarily close-knit and extended family. To that end, included in the attached letters are those from four of his cousins, his sister-in-law, his uncle, and five of his aunts. These individuals provide a clear and convincing account of Mr. Khater's upstanding role within their family and the community. For example, Mr. Khater's cousin, Jennifer Bozovic, states:

9

I was at work when I saw the news of my cousin Julian. I was shocked and speechless. Out of everyone in the world, Julian would be the last person I would think his could happen to.... Julian has three brothers. Out of all of the siblings, Julian was always the calmest, most reasonable, pragmatic and always kept his brothers out of trouble.... Julian attended Farleigh Dickinson University and graduated with a degree in finance. He has always worked hard, never got in trouble and is a contributing member of society. He joined our local church group with me where we helped the homeless, went on several religious retreats to help the people in need and held many events to raise money for our church and other not for profit organizations.

He has had many jobs with different areas of expertise and experience which he excelled at and was commended by all his employers. He has never been in trouble with the law. He is very family oriented and makes a special effort to see his nephews and our family.... Julian [is] a kind soul [and] loving person and is truly loved and supported by our entire family, many friends and people in our community. He is the last person on earth that would harm anyone, not even a bug. **[Exhibit H]**.

Another of Mr. Khater's cousin, Joseph Khater, expresses a similar view of him:

Upon hearing the news of Julian being detained, I was in shock. Having known Julian all [o]f his life, and basically growing up together, I know he is one of the most considerate and kind people. We spent countless hours riding bikes, climbing, and playing tag. He was such a gentle person he could not even kill a bug without getting upset. He is an amazing uncle to his nephews and nieces, playing hide and seek and making funny faces to keep them entertained for hours. He never misses an opportunity to hang out with his family.... He comes from a very loving, tight-knit family that is well-respected in the community. Even as adults, we have spent many a holiday playing board games and charades after the main courses and deserts are completed, he has played tirelessly to keep everyone engaged in the game.

In his work life he was the utmost professional employee and coworker. He was an exceptionally good team player and loved by many of the customers he served whether it was at PNC Bank, Top Golf, or even Panico's Restaurant. Also, while at Top Golf he exceeded performance in his job and was managing larger party bookings always being on top of any situation that should arise and diffusing any conflict peacefully. In short, he operates with integrity and is well liked by everyone. Julian is a person of high moral character, he never hesitates if someone needs·a helping hand, and always one to ask if you need something before you even get a chance to ask.

10

As a whole Julian is a reliable, trustworthy and loving person. I leave you with this example, Julian is the godfather of one of my nephews and during the ceremony my nephew would not sit still or stop crying, so Julian ever the problem solver spent most of the ceremony tickling my nephew's feet and playing peek-a-boo so he would not be crying the whole time. That is the Julian we all know and love. **[Exhibit I]**.

Mr. Khater's cousin, Joanna Khater, also speaks fondly about his positive attributes:

I have known him my whole life, and have always known him to be an affectionate and thoughtful person. When I was informed about Julian being in trouble, like the rest of the family, I was in disbelief. Julian would never hurt anyone or anything. He is one of the kindest and most empathetic people I know. I am one of the younger cousins in our family, and Julian would always stay behind to play with me when I wasn't able to partake in the older kids' activities. He would never let anyone feel left out or upset, and would rather sacrifice his wants just to put a smile on someone else's face.

Julian Khater is an honorable person, with good morals and a family that loves and misses him incredibly. He is an amazing uncle and Godfather, always putting his nieces and nephews needs before his own. He is an adored brother and son, always supporting his family in times of need. He is very involved in all family businesses and takes on many responsibilities to ensure the happiness of his family and the success of their investments. When his father became interested in the "Frutta bowls" chain, Julian was by his side, no questions asked..... He is a very trustworthy and family oriented man. He is a hard worker, and is thought of with the utmost respect with regards to his occupations and his everyday self. Julian could not hurt a fly, much less another person, and I know that will all of my heart. He comes from an upstanding family, with good morals.... **[Exhibit J]**.

Given his gentle nature, the last of Mr. Khater's cousins to write on his behalf, Amine

Khater, was, like his other relatives, shocked upon learning of his arrest in this matter:

When the news broke I was in complete shock, this is not my cousin Julian. Julian would never harm a fly. In fact, Julian was the one who avoided any conflicts, and the first to try to resolve any differences cordially. He spent his entire life working in the service industry. Julian worked in restaurants, taverns and even financial services industry with PNC Bank for some time. He was never involved in any altercation throughout his entire career.... Julian is a very likable man, gentle and down to earth. Julian has never had any run-in with the law his entire life. This whole situation has left the entire family in disarray. **[Exhibit K]**.

The wave of shock and dismay that rippled through Mr. Khater's family upon learning of his arrest was palpable, as the instant accusation stands in stark contrast to his true character. Indeed, his sister-in-law, Geeta Khater, writes:

> I have know Julian for 14 years and have watched him grow into a wonderful man. When I heard about the incident Julian was involved in, I was shocked and then heartbroken. This could not be happening. Not once did I believe Julian could have done the things he was being accused off.... He is my son Jason's Godfather and I know God chose him for a reason. He is always there when we need him and has never missed a family event. When the kids see him coming they get so excited!
>
> I have also lived and worked with Julian and can attest to his amazing work ethic and consideration for those around him. He has always had a positive outlook on any problem we deal with at work and always kept himself busy. When the days were long, he kept me laughing. **[Exhibit L]**.

Consistent with the preceding accounts, Mr. Khater's uncle, Pierre Khater, experienced his own shock upon hearing of his nephew's arrest:

> Julian is a very hard working responsible person. Julian is always very kind to everyone. He is also a great uncle and cousin to all of the children in the family. Julian has always been a great employee and manager in all of his endeavors. My nephew has never had any run-ins with the law, and always respected all law enforcement. Julian never harmed anyone in his life and would never do anything to upset anyone; he is of a very quiet nature. I was shocked to hear the news; this is not my nephew. **[Exhibit M]**.

As the testimonials now presented make clear, Mr. Khater does not have a propensity for violence or aggression. And that is precisely why news of Mr. Khater's arrest struck his entire family with such consternation. His aunt, Leila Farrelly, explains:

> When we heard of the event involving Julian, we were in total shock, because it absolutely defies the young man I have known him to be. Julian has always had high moral standards and great responsibility in his actions. I have always known him to be a peaceful, loving, great young man, and it is very hard to accept and believe what he is being accused of. Again, I have known Julian all his life and he has a great personality as well as great character, and he does not have a mean bone in his body. **[Exhibit N]**.

Similarly, Wadad Khater, another of Mr. Khater's aunts, expresses that he is "the sweetest kid to this day," has "never hurt anybody or did something bad to the community," and is "always honest, helpful, polite, respectful of others and hard working..." **[Exhibit O]**.   That view is corroborated by still another of Mr. Khater's aunts, Katie Fox, who states:

> Julian always struck me as a kind, considerate and serious person. To my knowledge, he has never previously engaged in violence of any kind at all. Quite the opposite: even as a child and teenager, he was remarkably gentle and thoughtful - a peacekeeper  and mediator, not a fighter. I have health problems, and it was always Julian who noticed when I was getting tired or struggling with something, always Julian who jumped to offer help. As he grew up, Julian increasingly longed to do something meaningful with his life, to make a difference. He has a strong sense of duty, and his ambition was to join the Sheriffs department. **[Exhibit P]**.

Mr. Khater's kind and amiable nature is corroborated by his aunt, Irina Khater:

> He is a great, upstanding, extremely polite, hard working person with a big heart. He is always happy to help with absolutely anything, from preparing to cleaning after the family party, to fixing stuff around the house, to help anyone who just simply need any type of help. He is from a religious family, he goes to church and participates in church events. He is [a] sweet, smart, generous, friendly, honest and very reliable man. He is amazing with kids, he is a great cousin to my sons and to everyone I know.... [H]e is a great man, [with a] big heart and open arms! **[Exhibit Q]**.

Lastly, with regard to his upright character, Dr. Anne Fox, another of Mr. Khater's aunts, writes:

> Julian has always been dear to me as he is such an empathetic person. Even as a young boy, I noticed that it was always Julian who carried my suitcase and made sure that I had everything I needed. As he grew up, I noticed that he was always keenly aware of the needs of others. Although a very quiet child, at school, whenever I would pick him up, or when I came across him, he would be surrounded by other children, adjudicating squabbles with calm fairness. As a young man, he was studious and incredibly hard-working. He was always determined to do something meaningful with his life. He threw himself into his business enterprise with the unwavering belief that he was also doing good for the community. **[Exhibit R]**.

In addition to wanting to do "good for the community," Dr. Fox makes clear that Mr. Khater is also steadfastly devoted to his family, writing that "Julian is fiercely loyal [and] will stand by his ... family ... no matter what." *Id.*  Given that fact, there is every reason to believe that he will not leave the 16 family members prepared to co-sign his bond in financial ruin by violating any condition of his release. And that conclusion is further buttressed by Mr. Khater's otherwise exemplary history and character.   As a testament thereto, those closest to Mr. Khater have described him as "polite and courteous," the "nicest and most conscientious person," a "kind," "quiet and shy" "responsible young man," "caring, funny, thoughtful, compassionate [and] emphathetic," "shy, quiet, [and] gentle," "kind-hearted," a person who is "honest, helpful, polite, respectful of others, and hardworking," "studious and hard-working," "remarkably gentle and thoughtful," "sweet, gentle, [and] calm," a person "of high moral character," and a "person with a big heart."  These are just some of the terms used to describe Mr. Khater by those who know him best.  As the Court will undoubtedly recognize, a person does not suddenly develop such a character after he is arrested. Rather, it is the hallmark of a person's true nature.  There is a reason that shock is a central theme running throughout all the letters provided – the instant Indictment does not at all reflect Julian Khater's upstanding history and characteristics.

### 2.      The Weight of the Evidence

As noted above, the weight of the evidence against a defendant is a factor to be considered for bail. Here, defendant Julian Khater is charged with violating 18 U.S.C. §§ 111(a)(1) and (b), and related offenses, for allegedly assaulting, resisting, or impeding certain officers using a dangerous weapon, *i.e.*, a bear spray cannister.  Specifically, as detailed in the criminal complaint, Mr. Khater is accused of "appearing" to hold such a cannister while spraying it in one continuous sweeping

14

motion of his arm "from side to side" and "in the direction" of law enforcement officers, while standing as much as "eight feet away from [them]" after "emphatically" yelling out, "They just [ ] sprayed me." [Dkt. No. 1, pp.3, 5].

While the Government has not yet provided discovery, the defense notes that certain information gleaned from the criminal complaint raises questions regarding the accusations against Mr. Khater. First, the reference to him "appearing" to hold a cannister of bear spray is less than definitive.

Second, proof that he took aim at officers is, at best, equivocal, given the Government's claim that he stood as much as "eight feet away from the officers" and did not spray directly at them but only "in the officers' direction." For that matter, any notion that he took deliberative aim at any officer is undercut by the very allegation that he was haphazardly "moving his right arm from side to side" in the midst of an unruly crowd after, himself, being sprayed with a chemical agent. Indeed, according to the Government itself, the act attributed to Mr. Khater occurred only after he "emphatically" yelled out, "They just [ ] sprayed me."

Third, a more than cursory reading of the criminal complaint reveals that the Government's case is far from impermeable. To be clear, the Government has not alleged beyond contestation that whatever Mr. Khater purportedly discharged, in fact, struck any officer. Rather, the criminal complaint alleges only that "*something* struck them in the face." [Dkt. No. 1, p.4] (emphasis added). And on that point, it bears emphasis that other spray had been discharged during the course of this episode, as evidenced by the fact Mr. Khater excitedly uttered that he had "just [been] sprayed." In fact, as depicted in the criminal complaint, at the exact moment Mr. Khater is alleged to be holding a cannister, an officer is doing so as well. [Dkt. No., p.4]. And, significantly, the winds were not at

15

all moderate in Washington D.C. at the time of this incident, blowing as much as 20 miles per hour, the strongest of the day.[2]

Given these circumstances, the Government will seemingly have difficulty establishing that it was Mr. Khater and not another, even possibly law enforcement, responsible for the "something" that struck the officers in this case.

In any event, regardless of what the Government believes its proof may show, the fact remains that conditions of release can be fashioned to reasonably assure Mr. Khater's appearance as required and the safety of the community. In fact, that conclusion is further supported by an examination of the unique nature and circumstances of the offense charged.

### 3.   The Nature and Circumstances of the Offense Charged

The criminal conduct charged in this case must be viewed against the extraordinarily unique and specific circumstances of January 6th. A large group of people gathered at the Capitol during the electoral college vote, encouraged to do so by the then-Commander-in-Chief, as he and a growing mob of protestors inflamed passions. Clearly, the conduct attributed to Mr. Khater in this case could only, by virtue of the incredibly atypical events of that day, be a one-off circumstance. And that factor is critical when assessing a defendant's threat of danger, for such a threat must be actual and not theoretical. *See United States v. Patriaca*, 948 F.2d 789 (1st Cir. 1991).

In making that evaluation, the "[t]he threat must [ ] be considered in context," as should the defendant's "means of [carrying out that threat] in the future." *United States v. Munchel*, 2021 WL 1149196, at *7 (D.C. Cir. 2021). "Whether a defendant poses a particular threat depends on the nature of the threat identified and the resources and capabilities of the defendant." *Id.*, at *7.

---

[2]https://www.timeanddate.com/weather/usa/washington-dc/historic?month=1&year=2021.

16

Here, the nature and circumstances of the offense charged, and any attendant danger, are so atypical that there is in actuality no real risk that the defendant will pose such a threat "in the future." *Munchel, id.*

### 4.   The Nature and Circumstances of the Danger to Any Person or the Community That Would Be Posed by the Person's Release

The circumstances set forth above amply demonstrate that the release of Mr. Khater will not pose any actual threat of danger to another or the community. As stated initially, the circumstances reflected in the criminal complaint were the product of an emotionally charged powder keg, inflamed by sudden passions and a mob mentality. But, even in the midst of such heightened emotionality, as many others entered the Capitol Building by breaking windows and ramming open doors, Mr. Khater never transgressed the barrier that lay directly before him. While the Government may attempt to paint the portrait of some zealot hellbent on destroying democracy, the facts simply do not give rise to such a fanciful image.

Rather, as the testimonials provided make clear, Mr. Khater is a kind and compassionate man who has absolutely no prior contact with the criminal justice system, a history of continuous employment, and a supportive and close-knit family. Plainly, his 32 years of peaceful and gainful existence far outweigh the singular and aberrational allegation attributed to him on January 6th. Indeed, in all that time, there has never before been one allegation of misconduct, violent or otherwise, against him.

Notwithstanding the foregoing, in order to allay any possible lingering concerns, Mr. Khater is prepared to subject himself to the most stringent of pre-trial release conditions, home detention with electronic monitoring. Although the defense submits that such a condition is unnecessary, Mr. Khater yearns to return home to his loved ones and is prepared to sacrifice certain liberties to do so.

Along the same lines, while the face amount of the proposed bond, the volume of prospective sureties, and the enormous value of collateral offered is also unnecessary to ensure Mr. Khater's compliance with the conditions of release, his family is wholly prepared to support such a substantial bail package, because they earnestly know he will comply with any release conditions and truly belongs home.

**C.      Julian Khater Does Not Pose a Risk of Flight**

Home is where Mr. Khater longs to be, alongside his family. Accordingly, any notion that he somehow poses a risk of flight is ill-conceived and belied by the objective facts, including his substantial ties to the community and his relevant Guidelines exposure. With regard to the latter, the defense has calculated a Guidelines range of 87 to 108 months applicable to the combined charges in this case, conservatively giving the Government the benefit of every arguable Guidelines enhancement for purposes of this motion.[3] In addition, while the defense does not now state U.S.S.G. § 3E1.1 will apply, were it ultimately deemed to do so, the aforementioned Guidelines range would be reduced to 63 to 78 months; *i.e.*, approximately five years on the low end.

Clearly, Mr. Khater is not about to throw away everything he knows – his entire life, his friends, and his family, thereby destroying them financially and emotionally in the process – to avoid such exposure. For the sake of emphasis, Mr. Khater's aunt, Dr. Anne Fox, has confirmed that "Julian is fiercely loyal [and] will stand by his ... family ... no matter what." [Exhibit R].

**D.      The Prospective Sureties and Collateral**

Just as Mr. Khater is loyal to his family members, so too are they to him. That is why 16 of them are prepared to sign their names to an incredibly high $15 million bond, putting their lives on

---

[3]That range is based on a combined total offense level of 29 and a criminal history category of I.

the line for him.  These family members, many from whom the Court is now in receipt of a character

letter, include: (1) his mother Eleanor Fox [Exhibit B]; (2) his father Elie M. Khater [Exhibit C]; (3)

his brother Michael Khater [Exhibit D]; (4) his brother Christopher Kater [Exhibit E]; (5) his brother

John Khater [Exhibit F]; (6) his cousin Jennifer Bozovic [Exhibit H]; (7) his cousin Josephine

Khater [Exhibit I]; (8) his cousin Joanna Khater [Exhibit J]; (9) his cousin Amine Khater [Exhibit

K]; (10) his cousin Elie F. Khater; (11) his cousin Ivan Bozovic; (12) his sister-in-law Geeta Khater

[Exhibit L]; (13) his sister-in-law's cousin, Anup Kumar; (14) his uncle Pierre Khater [Exhibit M];

(15) his aunt Leila Khater [Exhibit N]; and (16) his aunt Wadad Khater [Exhibit O].[4]

As referenced above, Mr. Khater and his family are also prepared to post as collateral for a

bond five properties located in New Jersey, containing in the aggregate approximately $1.5 million

in equity.[5]

The preceding extraordinary guarantees, coupled with home detention and electronic

monitoring, is more than sufficient to support Mr. Khater's pre-trial release.  Presently, Mr. Khater

is detained at the Correctional Treatment Facility in Washington D.C. where he is currently locked

down in his cell 23 hours a day in the midst of a once-in-a-lifetime pandemic.  According to a recent

article in the Washington Post dated March 29, 2021, entitled "End the coronavirus lockdown in the

D.C. jail"[6]:

---

[4]The defense has already provided to the Government a spreadsheet identifying each of these people, as well as his of her contact information, occupation, and employer.

[5]Four of these properties are owned by Mr. Khater's father and one of them by Mr. Khater himself.  To demonstrate ownership and equity with respect to them, the defense has already provided to the Government information relating to all such properties, including proof of ownership, any mortgage statements, and property tax assessments.

[6]https://www.google.com/amp/s/www.washingtonpost.com/opinions/2021/03/29/its-time-end-coronavirus-lockdown-dc-jail/%3foutputType=amp.

For nearly a year, the D.C. Jail has been on a coronavirus lockdown. Inmates have lived in their cells for 23 hours a day. They are not permitted to see their families or friends. Even interaction with attorneys is sparse. One inmate disclosed that he hadn't "seen sunlight for literally a year." Reports of inmate violence have risen, as have mental health problems. And though employees and inmates are now eligible for vaccination, D.C. Jail administrators have not yet outlined a plan to end this pandemic-induced purgatory of isolation and confinement.

      *            *            *            *

Inmates are still isolated, and their welfare has not been prioritized. According to one of several lawsuits filed in response to the D.C. Jail's handling of the public health crisis, instead of receiving medical care, inmates with the coronavirus have at times been locked in solitary confinement with no emergency buttons and insufficient hygienic products. These practices are inconsistent with science. According to the Center for Disease Control and Prevention and public health experts, vaccination and decarceration are the best ways to stem the spread of the coronavirus in jails and prisons.

      *            *            *            *

A federal court has consistently demanded, most recently in January, that administrators address the still-unacceptable medical care, sanitation and isolation conditions.[7] The moral imperative is just as clear: Continued lockdown promises to exacerbate health problems, rather than alleviate them. Prolonged isolation can cause anxiety, violent outbursts and suicidal thoughts. People who experience solitary confinement could lose the ability to live around other people, and inmates may become less capable of reentering their communities....

No pre-trial detention let alone that under these onerous conditions, for however long the pendency of this case may last, is necessary to reasonably assure the safety of the community and Mr. Khater's return to Court.

**E.**    **Summary**

In light of Julian Khater's upstanding history and characteristics, his lack of any prior criminal history, his relatively limited Guidelines sentencing exposure in this case, his lack of dangerousness, and the absence of any risk of flight, we submit that the substantial bail package

---

[7]The article refers to a civil proceeding in this District captioned *Banks, et. al. v. Booth, et. al.*, docket no. 20-849 (CKK).

presented is more than sufficient to satisfy the release requirements of the Bail Reform Act, 18 U.S.C. § 3142.

As stated in *United States v. Salerno*, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." 481 U.S. at 755 (1987). In accordance with that axiom, many defendants charged with violent and/or aggressive behavior on January 6th have been released pending trial. *See United States v. Palmer*, 21-mj-301 (GMH) (detention not justified for defendant accused of throwing a wooden plank at officers, spraying the contents of a fire extinguisher at officers, throwing the fire extinguisher at them, and then picking it up and throwing it at them a second time); *United States v. Mackrell*, 21-cr-276 (CKK) (detention not justified for defendant accused of striking officer and grabbing officer's mask under face shield to expose officer to bear spray, before stating, "whatever it takes for my country," "I'm not done," and "I'm going back in."); *United States v. Blair*, 21-cr-186 (CRC) (detention not justified for defendant accused of striking officer in chest area with large stick attached to Confederate flag and shouting, "what's up motherfucker, what's up, what's up bitch," while in possession of a knife, and yelling to crowd approached by officers, "hell naw, quit backing up, don't be scared, we're Americans, don't be scared, let's go quit backing up, quit being scared."); *United States v. Cua*, 2021 WL 918255 (D.D.C. March 10, 2021), slip op. at *1 (detention not justified for defendant who previously called for execution of elected officials and "glorified violent protest," and who on January 6, 2021, walked through Capitol building twirling a black baton, attempted to open office doors in the Capitol, thrice shoved aside a police officer to enter the Senate Chamber, sat "atop the Senate dais in the chair previously occupied by former Vice President Mike Pence, with his feet up on [ ] the desk," and photographed senators' papers in the chamber); *United States v. Leffingwell*, 21-cr-5 (ABJ)

21

(detention not justified for defendant who repeatedly punched a police officer at Capitol with a closed fist and breached line of officers attempting to keep people out of the building); *United States v. Capsel*, 21-mj-122 (RMM) (detention not justified for defendant captured on video physically fighting National Guardsmen who were attempting to hold a boundary, and who did not desist until he was sprayed with pepper spray); *United States v. Bisignano*, 21-cr-36 (CJN) (detention not justified for defendant accused of being an "instigator, a director, and an active participant in the violence, destruction and obstruction at the Capitol," who was on the front lines pushing against the police, shouted through a bullhorn, "Everybody, we need gas masks! We need weapons! We need strong, angry patriots to help our boys!" and is charged with destruction of property); *United States v. Hunter Ehmke*, 21-cr-29 (TSC) (detention not justified for defendant who broke window of Capitol building and did not cease when ordered to do so by police officer); *United States v. Jones*, 21-mj-76 (ZMF) (detention not justified for defendant who violently broke glass of doorway to House chamber Ashli Babbitt tried to climb through seconds later)); *United States v. Gossjankowski*, 21-cr-123 (PLF) (detention not justified for defendant who activated taser in Capitol multiple times); *United States v. Miller*, 21-cr-75 (RDM) (detention not justified for defendant who discharged fire extinguisher onto police officers and used a crowd barrier fence as a ladder to scale the Capitol building walls); *United States v. Powell*, 21-cr-179 (RCL) (detention not justified for defendant who used a battering ram to break a window of the Capitol, climbed in, came back out, used bullhorn to direct others inside with what seemed to be detailed knowledge of the floor plan, and exhorted others to break another window); *United States v. Biggs*, 21-mj-126 (RMM) (detention not justified for Proud Boy defendant who posted plans on social media before attack, was at front of crowd who breached and entered Capitol building within 20 seconds of breach, and communicated with other

22

Proud Boy members with walkie-talkies during riot); *United States v. Colt*, 21-cr-74 (TFH) (detention not justified for defendant wearing assault gear who scaled the wall of the Senate chamber, later proclaimed on social media that he was the first person to sit in former Vice President Pence's chair, and called Speaker Pelosi a "traitor"); *United States v. DeCarlo/Ochs*, 21-cr-73 (BAH) (detention not justified for Proud Boy organizers who planned and fundraised for the riot, one of whom had Proud Boys name tattooed on his body, who posted their obstructionist intent on social media, defaced the Capitol building with the words, "Murder the Media," and took flexicuffs from the Capitol); *United States v. Cudd*, 21-cr-68 (TNM) (detention not justified for defendant who livestreamed video from inside Capitol building stating that to gain entrance "we just pushed, pushed, and pushed, and yelled go and yelled charge," and said "fuck yes, I am proud of my actions, I fucking charged the Capitol today with patriots today. Hell, yes, I am proud of my actions," and later told a new station, "Yes, I would absolutely do it again").

Notably, every single defendant referenced above was released on an *unsecured* bond, as evidenced by the orders and/or appearance bonds annexed hereto as **Exhibit S**.

Here, the defense proposes that Julian Khater be released upon what amounts to a very substantial and secured bail package. Specifically, as detailed above, the defense respectfully requests that the Court grant Mr. Khater's pre-trial release upon stringent conditions of home detention and electronic monitoring, the immediate surrender of any and all passports, and the posting of a $15 million bond, secured by five properties containing approximately $1.5 million in equity and co-signed by 16 financially responsible people.

23

## CONCLUSION

For the reasons set forth herein, the defense respectfully submits that the Court should grant

the relief sought in the annexed Notice of Motion, so as to release defendant Julian Khater pending

trial, as well as such other and further relief as this Court deems just and proper.

DATED this 20th day of April, 2021.

Joseph Tacopina, Esq.
Chad Seigel, Esq.
Tacopina Seigel & DeOreo
Attorneys for Defendant *Julian Khater*
275 Madison Avenue, 35th Floor
New York, N.Y. 10016
Tel: (212) 227-8877


/s/ Alvin H. Thomas, Jr.
Alvin H. Thomas , Jr., Esq.
Law Office of Alvin H. Thomas Jr., PLLC
Attorney for Defendant *Julian Khater*
938 E. Swann Creek Road, #325
Fort Washington, MD. 20744
Tel: (301) 203-0893

24

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
---------------------------------------------------------X

UNITED STATES OF AMERICA

                           **Docket No. 21-CR-00222 (TFH)**

– against –

JULIAN ELIE KHATER,

         Defendant.

---------------------------------------------------------X

### CERTIFICATE OF SERVICE

     I hereby certify that on April 20, 2021, I caused a true and correct copy of the foregoing

Defendant's Motion for Pre-Trial Release and accompanying documents to be delivered to the

parties in this matter via Electronic Case Filing (ECF).

Chad Seigel, Esq.
Tacopina Seigel & DeOreo
Attorneys for Defendant *Julian Khater*
275 Madison Avenue, 35th Floor
New York, N.Y. 10016
Tel: (212) 227-8877

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
--------------------------------------------------------X

UNITED STATES OF AMERICA

                              **ATTORNEY DECLARATION**

– against –

JULIAN ELIE KHATER,                **Docket No. 21-CR-00222 (TFH)**

           Defendant.

--------------------------------------------------------X

      CHAD SEIGEL, ESQ., an attorney duly admitted *pro hac vice* to practice in this Court, hereby declares the following to be true under penalty of perjury:

      1.      I am a partner at Tacopina Seigel & DeOreo, counsel for Julian Khater, the defendant in this prosecution and, as such, am fully familiar with the facts and circumstances made in support of the instant motion.

      2.      This declaration is offered in support of defendant Julian Khater's motion for an Order granting his pretrial release, pursuant to 18 U.S.C. § 3142.

      3.      Defense counsel has received 18 letters from family members, a family friend, and a former co-worker of defendant Julian Khater, attesting to his upstanding history and characteristics. True and accurate copies of those letters are annexed hereto as Exhibits A through R.

      4.      In addition, annexed hereto as Exhibit S are true and correct copies of orders and/or appearance bonds relating to defendants who were charged in connection with the January 6th Capitol riot and released on bail.

WHEREFORE, for the reasons set forth in the accompanying memorandum of law, your declarant respectfully prays that an Order be entered granting the relief sought in the instant Motion, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      April 20, 2021

Chad Seigel, Esq.
Tacopina Seigel & DeOreo
Attorneys for Defendant *Julian Khater*
275 Madison Avenue, 35th Floor
New York, N.Y. 10016
Tel: (212) 227-8877

2

To whom it may concern in the case of Julian Elie Khater

Dear Sir/Madam,

My name is Maggie Dawoud and I was a coworker of Julian's at PNC Bank, Somerset, New Jersey from 2015 to 2016.
Julian was the nicest and most conscientious person to work with. He learned everything in record time and never missed an opportunity to better himself within our branch. He was always upbeat and humorous, and whatever he was tasked with he would accomplish with good grace and efficiency.
I was shocked to see that the media were portraying him to be violent or a trouble maker! This is not the Julian I knew and worked with! He was such a quiet and shy person! He was always polite and courteous to customers and all who worked with him. As far as I'm concerned, Julian doesn't have the mildest inkling of a temper!
I have no doubt that whatever has been leveled against him is a mistake and my thoughts and prayers are with him and his family. I would work with Julian again in a heartbeat!
Thank you for your consideration to Julian and please do not hesitate to contact me for any further character reference.

Yours sincerely,
Maggie Dawoud

# Maggie Dawoud

April 10ᵗʰ, 2021
To Whom It May Concern regarding the case of Julian Khater,

My name is Eleanor Fox and I am Julian Khater's mother.
Julian is my second of four sons. My first, third and fourth were
all little fireballs. Julian was always the quiet one, the sweet
one; as my father Dr. Robin Fox would say, "the little elves
brought Julian!" He was the one to hold the younger ones'
hands; he would not go and play with the other children in order
to stay behind and play with his younger cousins who couldn't
go off with the older kids. Every mother sees her children
through rose colored glasses, you could say, but Julian has never
been in trouble, has never caused trouble, and has never given
me a sleepless night.
I was raised in a family of intellectuals and Liberals. My father,
Dr Robin Fox, founded the Anthropology department at Rutgers
University in 1969. He is the author of over 30 books on the
subject and was inducted into the National Academy of
Sciences. My mother was university educated and we have
lived in the US since 1969. I also attended Rutgers University.
My sisters are both anthropologists, my younger sister Dr. Anne
Fox has a PHD in the subject, and my older sister, Kate Fox, is a
renowned author. My son Julian was raised to study, work hard,
and espouse a liberality of ideas and cultures.
My sister only told me of a typical Julian story after his arrest
because she had promised him, from age 7, never to tell Mom:
Julian ran into the road on one of our visit to see her. My sister
was horrified and Julian said to her, please don't tell Mom. She
told him that I wouldn't be angry with him, and he replied, I
know, but she would be scared and she would cry, and I don't
want to make her cry. That is my child, that is his heart.
Julian was always easy as a child, and continued that way
through school and college. He switched countries and
languages in his last year of high school, and went on to gain a
Bachelor's degree from Fairleigh Dickinson in Business and
Marketing. His father and I raised our boys to respect teachers,
and all of his teachers' comments were how polite and respectful
he was. Our home was one of laughter and discipline, and my
boys always came to me with their problems. Julian wanted to
become a police officer. I worried about that, but he felt a strong
sense of community for where we lived in New Jersey and had
friends who had joined the police force. His career took

different paths, but I was the most shocked when the media reports came out that said that Julian had supposedly attacked an officer!!  He wanted to BE an officer!  I knew it had to be wrong.  He would never, ever put a member of law enforcement in danger.

Whatever transpired or didn't on January 6th 2021, I know my child, and I know with the certainty, not of a blindly adoring mother, but with the conviction of a mother who is also a friend and confidante, that Julian no more intended to cause harm or use violence on another person than the little boy who didn't want his mother to cry.

I most fervently beseech you to look at all the testimonials written about Julian's character and show compassion to my son.

Sincerely,
Eleanor Fox

April 8th, 2021
Dear Sir/Madam,

My name is Elie Khater and I am Julian Khater's father.
I always strived and worked hard to raise a good family. I
brought up my four sons to be productive members of society. I
instilled in them good values, teaching them to be caring and
respectful of others.

They all attended college, and Julian in particular always kept
busy studying and working. He attended Raritan Valley College
where he earned his Associates Degree in Business (2007-2009).
He then attended Fairleigh Dickinson University from 2009 to
2011 where he earned his Bachelor's Degree in Business
Administration and Management. While Julian attended college
he always was employed. He worked at Peter's Liquors in New
Brunswick from 2007 to 2012. He also worked as bar manager
at Panico's Restaurant from 2011-2016, and from 2014 to 2016
as a financial sales consultant at PNC Bank in Somerset, New
Jersey. From December 2016 to January 2018, he worked as an
event ambassador and bartender at Top Golf in Edison, New
Jersey. From January 2018 to January 2019 he managed and co-
owned Frutta Bowls in Chapel Hill, North Carolina. Then from
January 2019 to May 2020 he ran the Frutta Bowls in State
college, Pennsylvania. He has worked and studied continuously
since he was 17.

Julian always worked in the service industry. He was always
well-liked by everyone and loved by his customers. He loved
people and people loved him. Julian is a loving, caring, quiet
and gentle human being. Any homeowner would love Julian as a
neighbor; any business owner would love Julian as an employee;
any parent dreams of having a son like Julian. Julian is always
respectful and considerate of others, and he has never ever
harmed a living being in his entire life. Julian always loved and
cherished law enforcement (police, fire fighters, army etc.).
Anyone who served our country in any capacity was his hero. In
fact, one of his ambitions was to join the Sherriff's Department
in Franklin Township, NJ.

Julian always kept busy with studies and work and was never
involved in anything else. I was shocked and devastated to learn
of his arrest in connection with the events of January 6th. Nothing
could be further from the truth than the statements in the media
that Julian is some kind of activist or agitator. Knowing my son

as I do, I can assure you that if he was there, it was to attend a peaceful rally, to listen to the speeches, and have fun. After all, no one expected this event to be anything other than peaceful, including the authorities in charge. Julian has never, and would *never* harm anyone, especially law enforcement which he cherishes. Julian happened to be at the wrong place at the wrong time.

It is my sincere hope that you take these notes and facts into serious consideration when thinking of Julian, and please do not hesitate to reach out to me at any time should you need anything else regarding Julian or this matter.

Very Sincerely yours,

Elie M Khater

April 2nd, 2021

**TO: The Judge presiding in the case of Julian Elie Khater**

Your Honor,

My name is Michael Khater. I am Julian Khater's only older brother, and hence have known him his entire life. I am writing you today to tell you what I know about Julian.

Julian was the quiet, sweet, gentle, shy, smiling, cheerful child that all parents wanted their kids to be friends with. Although he wasn't the most outgoing, Julian was extremely popular among friends, did very well throughout his academic endeavors, and was a standout athlete. While all the other guys in our town were out hunting, fishing, etc., Julian would convince his group to stay behind, and he would be playing basketball or table tennis with the younger family members and their friends, to keep them happy and entertained.

These are some of many reasons why I chose Julian to be the Godfather of my firstborn son. He is dependable, reliable, well-rounded, absolutely fantastic with my kids, and, most of all, *calm, considerate, gentle, and ALWAYS nice.* Julian would never hurt a fly. At least, in the 32 years he's been alive, I haven't seen it or even thought it could be possible. The thought of Julian planning or executing anything detrimental to himself or to others is simply inconceivable. When we would go out to eat together, sometimes after a long day at work, Julian couldn't even plan where and what to have for dinner, let alone plan anything else. He was a work-to-home, home-to work type of a person, always.

While I understand the dark cloud hanging above this issue, I am writing to assure you that Julian is not the person he is being painted out to be. He is sweet, gentle, calm, and would never hurt anything or anyone, ever. His academic and entrepreneurial success, combined with his complete lack of any history of anything negative whatsoever, are testament to his character, and I hope my above statements have added to that track record of success in the community, in the workplace, and in life in general.

Please do not hesitate to contact me should you need anything further regarding this matter.

All the best,
Michael Khater

April 8th, 2021

To Whom It May Concern,

I am writing this letter on behalf of my older brother, Julian Khater, whom I have known for my entire life. Julian was always a funny, loving and caring older brother to me. He was always there when I needed him, and had my back through all of the ups and downs I have been through. Julian is a very friendly person and is always looking to crack jokes, go to events, and have a good time with his friends and family. I know my brother is not capable of intentionally harming anyone or being a part of any type of violence whatsoever. All of his friends, family, and co-workers can attest to his joking and kind-hearted nature.

When I heard of my brother's arrest I was in absolute shock, and the allegations made against him and the smear stories circulating of him in the media are an absolute misrepresentation of him and his character. My brother does have his beliefs and opinions, but would never take part in violent actions in order to voice his opinions. These stories and allegations truly do not represent my brother, our family, or his character at all.

If you would like any further information, please do not hesitate to reach out to any of us, that is, his friends and family.

Sincerely,

Christopher Khater

███████████

April 10th, 2021

To Whom It May Concern,

My name is John Khater, and Julian Khater is my brother.

I was devastated to hear the news that my brother had been detained in connection with the events and the rally on January 6th at the Capital in Washington, DC. I know my brother better than anyone, as I am only thirteen months younger than him. We were basically raised together and people thought we were twins.

My brother Julian is not the person portrayed in the news. The person I have had to read about is the opposite of my brother. He was always kind and protective of me, and I am sure I can speak for of all his siblings, cousins, and friends on that matter. He has never been an activist for anything. He had never attended a rally before. He is quiet and shy. He never even raises his voice. He is the kindest to children, and the chosen Godfather of many, many of our family's young in the next generation.

Julian has only ever been a caring, funny, thoughtful, compassionate, empathetic and protective brother. I cannot believe what is being said and circulated about him. This is not who Julian is in any way, shape, or form.

Please do not hesitate to contact me if you need any further information about my dear brother.

Sincerely,

John Khater

April 7, 2021

To Whom It May Concern,

I am writing this letter on behalf of Julian Khater, whom I have known since he was born. I am a close friend of the family, and for many years a frequent guest at their home as all the boys were growing up. I always thought of Julian as a shy, quiet, gentle boy. He was always well behaved, considerate of others, attentive to the younger children, and a helper around the house.

Of course I was completely shocked when I heard about his recent arrest as well as the idea of him being involved in anything violent, which totally defies the young man I have known him to be. I merely would like to attest to his good character, and that while we may not all have agreed politically on certain issues, I find it very hard to accept what he is being accused of, as it truly defies the Julian that I know.

Please do not hesitate to contact me if you should need further information.

Sincerely,

Alissa Latner

Closter Councilwoman

April 11ᵗʰ, 2021

To the Judge Presiding Over Julian Khater's Case:

Your Honor,
I was at work when I saw the news of my cousin Julian. I was
shocked and speechless. Out of everyone in the world, Julian
would be the last person I would think his could happen to.
Julian and I were born 8 months apart. We are first cousins and
were attached at the hip since birth. We were even baptized
together. We grew up across the street from each other, went to
the same school, hung out with the same group of friends and
practically spent all day together. Julian has three brothers. Out
of all of the siblings, Julian was always the calmest, most
reasonable, pragmatic and always kept his brothers out of
trouble. He was always protecting all of us from bullies and
taking care of all of the younger ones of our group.

Julian attended Farleigh Dickinson University and graduated
with a degree in finance. He has always worked hard, never got
in trouble and is a contributing member of society. He joined our
local church group with me where we helped the homeless, went
on several religious retreats to help the people in need and held
many events to raise money for our church and other not for
profit organizations.

He has had many jobs with different areas of expertise and
experience which he excelled at and was commended by all his
employers. He has never been in trouble with the law. He is very
family oriented and makes a special effort to see his nephews
and our family even though for a time he was living in North
Carolina and Pennsylvania. He would make special trips just to
see us.

Julian a kind soul, loving person and is truly loved and
supported by our entire family, many friends and people in our
community. He is the last person on earth that would harm
anyone, not even a bug.

Jennifer Bozovic
Licensed Title Producer/Paralegal

April 11ᵗʰ, 2021
To Whom it may concern,

Upon hearing the news of Julian being detained, I was in shock. Having known Julian all if his life, and basically growing up together, I know he is one of the most considerate and kind people. We spent countless hours riding bikes, climbing, and playing tag. He was such a gentle person he could not even kill a bug without getting upset. He is an amazing uncle to his nephews and nieces, playing hide and seek and making funny faces to keep them entertained for hours. He never misses an opportunity to hang out with his family, whether it be on the average day, or on any special trips and holidays, since some of his brothers live out of state, and because family is so important to him. He comes from a very loving, tight-knit family that is well-respected in the community. Even as adults, we have spent many a holiday playing board games and charades after the main courses and deserts are completed, he has played tirelessly to keep everyone engaged in the game.

In his work life he was the utmost professional employee and coworker. He was an exceptionally good team player and loved by many of the customers he served whether it was at PNC Bank, Top Golf, or even Panico's Restaurant. Also, while at Top Golf he exceeded performance in his job and was managing larger party bookings always being on top of any situation that should arise and diffusing any conflict peacefully. In short, he operates with integrity and is well liked by everyone. Julian is a person of high moral character, he never hesitates if someone needs a helping hand, and always one to ask if you need something before you even get a chance to ask.

As a whole Julian is a reliable, trustworthy and loving person. I leave you with this example, Julian is the godfather of one of my nephews and during the ceremony my nephew would not sit still or stop crying, so Julian ever the problem solver spent most of the ceremony tickling my nephew's feet and playing peek-a-boo so he would not be crying the whole time.

That is the Julian we all know and love.

Thank you.
Josephine Khater

April 6ᵗʰ, 2021

To whom it may concern,

Julian Khater is one of my closest and dearest cousins; so close, he is practically a brother to me. I have known him my whole life, and have always known him to be an affectionate and thoughtful person. When I was informed about Julian being in trouble, like the rest of the family, I was in disbelief. Julian would never hurt anyone or anything. He is one of the kindest and most empathetic people I know. I am one of the younger cousins in our family, and Julian would always stay behind to play with me when I wasn't able to partake in the older kids' activities. He would never let anyone feel left out or upset, and would rather sacrifice his wants just to put a smile on someone else's face.

Julian Khater is an honorable person, with good morals and a family that loves and misses him incredibly. He is an amazing uncle and Godfather, always putting his nieces and nephews needs before his own. He is an adored brother and son, always supporting his family in times of need. He is very involved in all family businesses and takes on many responsibilities to ensure the happiness of his family and the success of their investments. When his father became interested in the "Frutta bowls" chain, Julian was by his side, no questions asked. He even uprooted himself and moved to the location of the chain to aid his father in managing the new business. Even after moving away from his family, he manages to see all of his nieces and nephews by traveling from state to state constantly, only to brighten everyone's day and spend time with the people he loves most. He is a very trustworthy and family oriented man. He is a hard worker, and is thought of with the utmost respect with regards to his occupations and his everyday self. Julian could not hurt a fly, much less another person, and I know that will all of my heart. He comes from an upstanding family, with good morals and judgement.

I don't believe for one minute that my cousin could ever do something like he is being accused of. Julian Khater is a compassionate and patient person that stayed behind to play with me, his little cousin, because he cared more about my happiness than his own.

Thank you,

Joanna Khater

April 3rd, 2021
To whom it may concern:

Julian my cousin and the godfather of my second son.

Growing up with Julian was an absolute pleasure. Our family is very close. Even though
we are cousins we practically grew up in the same home. We saw and played with
each other as children on a daily basis. Julian was always the quiet one, very reserved
and always kept to himself. When the news broke I was in complete shock, this is not
my cousin Julian. Julian would never harm a fly. In fact, Julian was the one who
avoided any conflicts, and the first to try to resolve any differences cordially. He spent
his entire life working in the service industry. Julian worked in restaurants, taverns and
even financial services industry with PNC Bank for some time. He was never involved
in any altercation throughout his entire career.

He soon realized that entrepreneurship was for him and began to run his family
business Frutta Bowl in a completely different state North Carolina. Even though he
was in a different state he managed to adapt and make friends there, he pretty much
made friends easily everywhere he went.

Julian is a very likable man, gentle and down to earth. Julian has never had any run-in
with the law his entire life. This whole situation has left the entire family in disarray. Our
family has never had any run-in with the law since my father and uncle immigrated here
in 1976. We are raised to respect our country, our democracy and our law
enforcement.

Amine M. Khater J.D. (cousin)

April 8th, 2021

To whom it may concern,

My name is Geeta Khater and Julian Khater is my brother-in-law. I have known Julian for 14 years and have watched him grow into a wonderful man.

When I heard about the incident Julian was involved in, I was shocked and then heartbroken. This could not be happening. Not once did I believe Julian could have done the things he was being accused off.

Julian is one of four brothers and by far the sweetest and kindest. He is my son Jason's Godfather and I know God chose him for a reason. He is always there when we need him and has never missed a family event. When the kids see him coming they get so excited!

I have also lived and worked with Julian and can attest to his amazing work ethic and consideration for those around him. He has always had a positive outlook on any problem we deal with at work and always kept himself busy. When the days were long, he kept me laughing.

I am asking that you please take this letter into consideration when thinking of Julian and understand that this is not something that is in Julian's nature.

Sincerely,
Geeta Khater

April 11ᵗʰ, 2021

To Whom It May Concern,

As Julian's uncle, I practically raised him most of his life with his father. Julian is a very hard working responsible person. Julian is always very kind to everyone. He is also a great uncle and cousin to all of the children in the family. Julian has always been a great employee and manager in all of his endeavors. My nephew has never had any run-ins with the law, and always respected all law enforcement. Julian never harmed anyone in his life and would never do anything to upset anyone; he is of a very quiet nature.

I was shocked to hear the news; this is not my nephew.
My nephew would never do anything like this. This situation has left my family in tears.

Please feel free to contact me if you need any additional information about my nephew Julian Khater and his character.

Sincerely,
Pierre Khater (uncle)

Pierre m

April 5, 2021

**To whom it may concern:**

I am writing this letter on behalf of my nephew, Julian Khater. I have known Julian since birth. He was a great, shy kid and he grew into a loving, successful, and well-behaved young man. Everyone loves him. He finished college and sought different opportunities with different companies.

He then ventured into his own business, Frutta Bowls. He had an excellent track record and great relationships with all of his customers, never getting himself into any trouble.

When we heard of the event involving Julian, we were in total shock, because it absolutely defies the young man I have known him to be. Julian has always had high moral standards and great responsibility in his actions. I have always known him to be a peaceful, loving, great young man, and it is very hard to accept and believe what he is being accused of.

Again, I have known Julian all his life and he has a great personality as well as great character, and he does not have a mean bone in his body.

Sincerely,

Leila Farrelly



04/04/2021

To Whom It May Concern,

As his Aunt I Testify with the whole Truth as I have Known Julian Since he was born. He was the Sweetest Kid ~~aunted this~~ To this Day he never hurt any body, or did something bad to the community always honest, helpful, polite, respectful of others and hard working business men that all the customers had an excellent relationship with...

Kate Fox



Email:

April 2nd, 2021

**TO: The Judge presiding in the case of Julian Elie Khater**

Dear Sir/Madam,

My name is Kate Fox. I am Julian's aunt and so have known him all his life, visiting his family regularly. I am an anthropologist and author.

Julian always struck me as a kind, considerate and serious person. To my knowledge, he has never previously engaged in violence of any kind at all. Quite the opposite: even as a child and teenager, he was remarkably gentle and thoughtful - a peacekeeper and mediator, not a fighter. I have health problems, and it was always Julian who noticed when I was getting tired or struggling with something, always Julian who jumped to offer help.

As he grew up, Julian increasingly longed to do something meaningful with his life, to make a difference. He has a strong sense of duty, and his ambition was to join the Sheriff's department. But for his career offering him other opportunities at that time, he would now be a member of the Sheriff's department, serving and protecting his community.

Please do not hesitate to contact me if there is anything more I can do to help you.

Yours sincerely,
Kate Fox

April 3rd, 2021

To whom it may concern,

My name is Irina Khater, I am Julian's uncle's wife for over 20 years and that is how
long I know Julian. He is a great, upstanding, extremely polite, hard working person with
a big heart. He is always happy to help with absolutely anything, from preparing to
cleaning after the family party, to fixing stuff around the house, to help anyone who just
simply need any type of help. He is from a religious family, he goes to church and
participates in church events. He is sweet, smart, generous, friendly, honest and very
reliable man. He is amazing with kids, he is a great cousin to my sons and to everyone I
know. There is absolute nothing bad that I could think of to say about Julian, except that
he is a great man, big heart and open arms!
Please take this letter into consideration when thinking of Julian, and do not hesitate to
contact me should you have any questions regarding this matter.

Sincerely,
Irina Albatova Khater

**Dr Anne Fox**



April 2nd, 2021

**TO: The Judge presiding in the case of Julian Elie Khater**

Dear Sir/Madam,

My name is Dr Anne Fox. I am Julian's aunt and have therefore known him all his life. I am an anthropologist and author. Until I closed the company last year, I was the Director of a research and education company. Although I live in England, I have visited my sister and Julian's family regularly, sometimes twice a year, since he was born.

Julian has always been dear to me as he is such an empathetic person. Even as a young boy, I noticed that it was always Julian who carried my suitcase and made sure that I had everything I needed. As he grew up, I noticed that he was always keenly aware of the needs of others. Although a very quiet child, at school, whenever I would pick him up, or when I came across him, he would be surrounded by other children, adjudicating squabbles with calm fairness. As a young man, he was studious and incredibly hard-working. He was always determined to do something meaningful with his life. He threw himself into his business enterprise with the unwavering belief that he was also doing good for the community. His business closed as a result of the pandemic and through no lack of dedication on his part.

Most of all, I would say that Julian is fiercely loyal; he will stand by his friends, his family, and his beliefs, no matter what. As far as I am aware, Julian has never been engaged in violence of any kind whatsoever. On January 6th, I strongly believe, based on my communication with him earlier that year, that, misguided as he may have been, he never had it in his heart to do any harm to another human being.

Please do not hesitate to contact me if there is anything further I can do to help you to understand my nephew's character and motivations. Alongside everyone in his family, I am committed to do anything that will help.

Sincerely,

Dr Anne Fox

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
## for the
Middle District of Florida

RECEIVED
U.S. MARSHAL
2021 MAR 17 AM 3: 03
MIDDLE DIST. OF FLORIDA
TAMPA

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 8:21-mj-1247-T-JSS |
| ROBERT SCOTT PALMER | ) | |
| *Defendant* | ) | |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ ROBERT SCOTT PALMER _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( X )     to appear for court proceedings;
( X )     if convicted, to surrender to serve a sentence that the court may impose; or
( X )     to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

(   ) (1)   This is a personal recognizance bond.

( X ) (2)   This is an unsecured bond of $ __25,000.00_____ .

(   ) (3)   This is a secured bond of $ _____ , secured by:

     (   )   (a) $ _____ , in cash deposited with the court.

     (   )   (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:

     If this bond is secured by real property, documents to protect the secured interest may be filed of record.

     (   )   (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1)    all owners of the property securing this appearance bond are included on the bond;

(2)    the property is not subject to claims, except as described above; and

(3)    I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date:   03/17/2021

_____                                        _____
                                                                                                            *Defendant's signature*

Carol R. Peros                                                          Carol R. Peros    3/17/2021
_____                                        _____
*Surety/property owner – printed name*                                 *Surety/property owner – signature and date*

_____                                        _____
*Surety/property owner – printed name*                                 *Surety/property owner – signature and date*

_____                                        _____
*Surety/property owner – printed name*                                 *Surety/property owner – signature and date*

*CLERK OF COURT*

Date:   03/17/2021

                                                                        _____
                                                                        *Signature of Clerk or Deputy Clerk*

Approved.

Date:   03/17/2021

                                                                        _____
                                                                        *Judge's signature*

AO 199A (Rev. 06/19) Order Setting Conditions of Release

Page 1 of ___3___ Pages

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   21-mj-316 |
| Clifford Mackrell | ) | |
| | ) | |
| *Defendant* | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)    The defendant must not violate federal, state, or local law while on release.

(2)    The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)    The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)    The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at:    U.S. District Court for the District of Columbia, 333 Constitution Ave NW, WDC

*Place*

before Magistrate Judge G. Michael Harvey

on _____ 4/7/2021 1:00 pm _____

*Date and Time*

If blank, defendant will be notified of next appearance.

(5)    The defendant must sign an Appearance Bond, if ordered.

AO 199B  (Rev. 12/11)  Additional Conditions of Release                                                                          Page  2  of  3  Pages

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(   ) (6)  The defendant is placed in the custody of:

       Person or organization  _____

       Address *(only if above is an organization)*  _____

       City and state  _____    Tel. No.  _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately
if the defendant violates a condition of release or is no longer in the custodian's custody.

                        Signed:  _____    _____

                                               *Custodian*                               *Date*

( ✕ ) (7)  The defendant must:

   ( ✕ ) (a) submit to supervision by and report for supervision to the  <u>Courtesy Supervision by ND of Ohio</u> ,

            telephone number  <u>(202) 442-1000</u>, no later than  _____.

   (   ) (b) continue or actively seek employment.

   (   ) (c) continue or start an education program.

   (   ) (d) surrender any passport to:  _____

   (   ) (e) not obtain a passport or other international travel document.

   ( ✕ ) (f) abide by the following restrictions on personal association, residence, or travel:  <u>Live at Lorain Ohio 44052</u> _____

   (   ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution,
            including:  _____

   (   ) (h) get medical or psychiatric treatment:  _____

   (   ) (i) return to custody each  _____ at  _____ o'clock after being released at  _____ o'clock for employment, schooling,
            or the following purposes:  _____

   (   ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers
            necessary.

   ( ✕ ) (k) not possess a firearm, destructive device, or other weapon.

   (   ) (l) not use alcohol (     ) at all (     ) excessively.

   (   ) (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed
            medical practitioner.

   (   ) (n) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random
            frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited
            substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited
            substance screening or testing.

   (   ) (o) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or
            supervising officer.

   (   ) (p) participate in one of the following location restriction programs and comply with its requirements as directed.

        (   ) (i)  **Curfew.** You are restricted to your residence every day (    ) from  _____ to  _____ , or (    ) as
                directed by the pretrial services office or supervising officer; or

        (   ) (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical,
                substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities
                approved in advance by the pretrial services office or supervising officer; or

        (   ) (iii) **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and
                court appearances or other activities specifically approved by the court.

   ( ✕ ) (q) submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program
            requirements and instructions provided.

        ( ✕ ) You may pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or
              supervising officer.

   (   ) (r) report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including
            arrests, questioning, or traffic stops.

   ( ✕ ) (s) <u>Stay out of DC except for Court, PSA business or to meet with Counsel. Notify PSA in advance of travel outside</u>
            <u>the Northern District of Ohio. Court to approve all travel outside the Continental United States. GPS Monitoring.</u>

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
acknowledged on the record
*Defendant's Signature*

_____
*City and State*

### Directions to the United States Marshal

(   ) The defendant is ORDERED released after processing.

(   ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: __March 24, 2021__

2021.03.24 11:14:45 -04'00'

_____
*Judicial Officer's Signature*

Zia M. Faruqui, U.S. Magistrate Judge
*Printed name and title*

DISTRIBUTION: COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

AO 199A (Rev. 06/19) Order Setting Conditions of Release                                        Page 1 of ___3___ Pages

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   21-MJ-211 (ZMF) |
| David Alan Blair | ) | |
| *Defendant* | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)   The defendant must not violate federal, state, or local law while on release.

(2)   The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)   The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)   The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at:   U.S. District Court for the District of Columbia, 333 Constitution Ave NW, WDC
_____
*Place*

Magistrate Judge Zia M. Faruqui. The hearing will be conducted virtually; call-in instructions will be provided.
_____

on   _____ 3/10/2021 1:00 pm _____
*Date and Time*

If blank, defendant will be notified of next appearance.

(5)   The defendant must sign an Appearance Bond, if ordered.

AO 199B  (Rev. 12/11)  Additional Conditions of Release

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( )  (6)  The defendant is placed in the custody of:
Person or organization _____
Address *(only if above is an organization)* _____
City and state _____  Tel. No. _____
who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately
if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____  _____
                    *Custodian*                   *Date*

( X )  (7)  The defendant must:
  ( X )  (a)  submit to supervision by and report for supervision to the  Pretrial Services weekly via telephone  ,
        telephone number  (202) 442-1000 , no later than _____ .
  ( )  (b)  continue or actively seek employment.
  ( )  (c)  continue or start an education program.
  ( )  (d)  surrender any passport to: _____
  ( )  (e)  not obtain a passport or other international travel document.
  ( X )  (f)  abide by the following restrictions on personal association, residence, or travel:  Notify PSA of all travel outside of Maryland.
        Court must approve travel outside continental U.S. See "s" below for additional travel restrictions.
  ( )  (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution,
        including: _____
  ( )  (h)  get medical or psychiatric treatment: _____
  ( )  (i)  return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling,
        or the following purposes: _____
  ( )  (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers
        necessary.
  ( X )  (k)  not possess a firearm, destructive device, or other weapon.
  ( )  (l)  not use alcohol ( ) at all ( ) excessively.
  ( )  (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed
        medical practitioner.
  ( )  (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random
        frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited
        substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited
        substance screening or testing.
  ( )  (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or
        supervising officer.
  ( )  (p)  participate in one of the following location restriction programs and comply with its requirements as directed.
        ( )  (i)  **Curfew.** You are restricted to your residence every day ( ) from _____ to _____ , or ( ) as
            directed by the pretrial services office or supervising officer; or
        ( )  (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical,
            substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities
            approved in advance by the pretrial services office or supervising officer; or
        ( )  (iii)  **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and
            court appearances or other activities specifically approved by the court.
  ( )  (q)  submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program
        requirements and instructions provided.
        ( ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or
          supervising officer.
  ( )  (r)  report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including
        arrests, questioning, or traffic stops.
  ( X )  (s)  Stay away from Washington, DC except for court, meetings with attorney or PSA. Verify address with PSA.
        Surrender any remaining firearms to local authorities and submit receipt to PSA.

AO 199C (Rev. 09/08) Advice of Penalties                                                    Page    3    of    3    Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

Acknowledged and Sworn on the Record on February 17, 2021.

_____
*Defendant's Signature*

_____
*City and State*

## Directions to the United States Marshal

(xx    ) The defendant is ORDERED released after processing.

(    ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:  February 17, 2021  *nunc pro tunc*        _____   Robin M. Meriweather
                                                                                     2021.02.22 23:07:10 -05'00'
                                                 *Judicial Officer's Signature*

                                                 Magistrate Judge Robin Meriweather
                                                 _____
                                                 *Printed name and title*

DISTRIBUTION:   COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

AO 199A (Rev. 12/11)  Order Setting Conditions of Release

Page 1 of ___3___ Pages

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| United States of America<br>v.<br>Bruno Cua | )<br>)<br>)<br>)<br>) |

Case No.  21-cr-107

_____
*Defendant*

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)  The defendant must not violate federal, state, or local law while on release.

(2)  The defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

(3)  The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)  The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at:   at all court hearings or matters at a time, place, and manner as directed by the
_____
*Place*

Court.
_____

on
_____
*Date and Time*

(5)  The defendant must sign an Appearance Bond, if ordered.

AO 199B  (Rev. 12/11)  Additional Conditions of Release

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( **✕** )  (6)  The defendant is placed in the custody of:
Person or organization     Dr. Alise Cua (Defendant's mother)
Address *(only if above is an organization)*
City and state                                                                 Tel. No.
who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed:    Acknowledged on the record                           03/09/2021
                                *Custodian*                                                      *Date*

( **✕** )  (7)  The defendant must:
( **✕** ) (a)  submit to supervision by and report for supervision to the   US Probation NDGA as directed  ,
telephone number   (404) 215-1950 , no later than   Immediately upon Return to Georgia but in no event later than
( ) (b)  continue or actively seek employment.   03/17/2021
( ) (c)  continue or start an education program.
( **✕** ) (d)  surrender any passport to:     US Probation Office for the Northern District of Georgia
( **✕** ) (e)  not obtain a passport or other international travel document.
( **✕** ) (f)  abide by the following restrictions on personal association, residence, or travel:   Stay out of Washington DC except for
Court or PSA business or meetings with attorney. Travel Restricted to Fulton County, GA.
( ) (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution,
including:

( ) (h)  get medical or psychiatric treatment:

( ) (i)  return to custody each                   at              o'clock after being released at                   o'clock for employment, schooling,
or the following purposes:

( ) (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers
necessary.
( **✕** ) (k)  not possess a firearm, destructive device, or other weapon.
( **✕** ) (l)  not use alcohol ( **✕** ) at all ( ) excessively.
( **✕** ) (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed
medical practitioner.
( **✕** ) (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer.  Testing may be used with random
frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited
substance screening or testing.  The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited
substance screening or testing.
( ) (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or
supervising officer.
( **✕** ) (p)  participate in one of the following location restriction programs and comply with its requirements as directed.
( ) (i)  **Curfew.**  You are restricted to your residence every day ( ) from                   to              , or ( ) as
directed by the pretrial services office or supervising officer; or
( **✕** )(ii)  **Home Detention.**  You are restricted to your residence at all times except for employment; education; religious services; medical,
substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities
approved in advance by the pretrial services office or supervising officer; or
( )(iii)  **Home Incarceration.**  You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and
court appearances or other activities specifically approved by the court.
( **✕** ) (q)  submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program
requirements and instructions provided.
( **✕** )You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or
supervising officer.
( **✕** ) (r)  report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including
arrests, questioning, or traffic stops.
( **✕** ) (s)  Comply with any and all conditions as directed in the supervising jurisdiction.  Def't is not restricted from his
home's curtilage and surrounding 3 acre property, but must always be under supervision of 3rd party custodian.
Defendant may not use any social media--including, but not limited to, Parler, Gab, Reddit, Facebook, Instagram, Discord, Twitter,
SnapChat, TikTok, and any similar platform--on any electronic device (e.g, phone, table, computer, laptop).  Defendant must permit ND
Ga Probation Office to monitor his compliance with this condition.

AO 199C (Rev. 09/08) Advice of Penalties | Page __3__ of __3__ Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

    Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

    While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

    It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

    If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

    (1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

    (2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

    (3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

    (4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

    A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

    I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____

*Defendant's Signature*

_____

*City and State*

### Directions to the United States Marshal

(   ) The defendant is ORDERED released after processing.

(   ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:     3/10/2021

_____

*Judicial Officer's Signature*

Randolph D. Moss, United States District Judge

*Printed name and title*

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 21-107 (RDM) |
| BURNO JOSEPH CUA, | |
| *Defendant.* | |

## ORDER

This matter is before the Court on Defendant Bruno Joseph Cua's Motion to Clarify the Conditions of his Release. Dkt. 31. For the following reasons, the Court will **GRANT** in part and **DENY** in part Cua's motion.

In his motion, Cua first asks that the "Court's Order Setting Conditions of Release . . . [be] clarified to confirm that [] Cua is permitted to leave his home's property for employment purposes, subject to the other conditions of release specified therein and the supervision of the Pretrial Services Office." Dkt. 31-1 at 1. The Court will deny this request as moot. The Court's order already provides that Cua is "restricted to [his] residence at all times *except for employment*; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; *or other activities approved in advance by the pretrial services office or supervising officer.*" Dkt. 25-1 at 3 (emphasis added). It is true that Cua is not obligated to adhere to Condition 7(b); but that Condition *requires* Cua to "continue or [to] actively seek employment," and thus has no relevance to Condition 7(p)(ii), which, instead, *permits* Cua to leave his house for employment-related matters. *Id.*

Cua also asks the Court to modify the terms of his release to clarify that Dr. Cua "is not required to remain with [Cua] during [any] work" that Cua engages in outside the home. Dkt. 31-1 at 1. The Court will grant this request, subject to the following: should Cua engage in any employment outside his home, he must be supervised by an adult who shall complete, sign, and provide to Cua's counsel Attachment A, attesting under penalty of perjury to Cua's compliance with the conditions of his pretrial release. Such attestations shall be filed by Cua's counsel with the Court within two days of the completion of each week during which Cua was employed by any such individual outside Cua's home.

## CONCLUSION

For the foregoing reasons, Defendant Bruno Joseph Cua's Motion to Clarify the Conditions of his Release, Dkt. 31, is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the Dr. Cua is not required to remain with Cua during any work that Cua engages in outside the home, to the extent that (1) Cua is supervised by an adult who shall complete, sign, and provide to Cua's counsel Attachment A, attesting under penalty of perjury to Cua's compliance with the conditions of his pretrial release; and (2) any such attestations shall be filed by Cua's counsel with the Court within two days of the completion of each week during which Cua was employed by any individual outside Cua's home.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: April 12, 2021

2

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Mark Leffingwell | ) | Case No.  21-MJ-7 |
| | ) | |
| _Defendant_ | ) | |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Mark Leffingwell _____ _(defendant)_, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

    ( × )    to appear for court proceedings;

    ( × )    if convicted, to surrender to serve a sentence that the court may impose; or

    ( × )    to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( × ) (1)  This is a personal recognizance bond.

(   ) (2)  This is an unsecured bond of $ _____ .

(   ) (3)  This is a secured bond of $ _____ , secured by:

    (   ) (a) $ _____ , in cash deposited with the court.

    (   ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property _(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)_:

        If this bond is secured by real property, documents to protect the secured interest may be filed of record.

    (   ) (c) a bail bond with a solvent surety _(attach a copy of the bail bond, or describe it and identify the surety)_:

### Forfeiture or Release of the Bond

_Forfeiture of the Bond._ This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

Case 1:21-cr-00223-TFH Document 29-1 Filed 05/26/21 Page 77 of 104
Case 1:21-cr-00009-ABJ Document 5-1 Filed 01/08/21 Page 2 of 2

Page 2

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1) all owners of the property securing this appearance bond are included on the bond;
(2) the property is not subject to claims, except as described above; and
(3) I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _____          unable to sign due to pandemic
                                 *Defendant's signature*

_____          _____
*Surety/property owner – printed name*     *Surety/property owner – signature and date*

_____          _____
*Surety/property owner – printed name*     *Surety/property owner – signature and date*

_____          _____
*Surety/property owner – printed name*     *Surety/property owner – signature and date*

                    *CLERK OF COURT*

                    Philip Tran  Digitally signed by Philip Tran

Date: 01/08/2021          *Signature of Clerk or Deputy Clerk*

Approved.                    Digitally signed by G. Michael Harvey

Date: 01/08/2021          *Judge's signature*

AO 199A (Rev. 06/19) Order Setting Conditions of Release

Page 1 of ___3___ Pages

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 21-mj-122 |
| Matthew Capsel | ) | |
| | ) | |
| *Defendant* | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)    The defendant must not violate federal, state, or local law while on release.

(2)    The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)    The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)    The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at:     U.S. District Court for the District of Columbia, 333 Constitution Ave NW, WDC
_____
*Place*

Preliminary Hearing before Magistrate Judge Zia M. Faruqui by telephonic/VTC
_____

on                                              6/4/2021 10:30 am
_____
*Date and Time*

If blank, defendant will be notified of next appearance.

(5)    The defendant must sign an Appearance Bond, if ordered.

AO 199B  (Rev. 12/11)  Additional Conditions of Release

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(  )  (6)  The defendant is placed in the custody of:
Person or organization _____
Address *(only if above is an organization)* _____
City and state _____  Tel. No. _____
who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____   _____
                Custodian                                    Date

( × )  (7)  The defendant must:

( × )  (a)  submit to supervision by and report for supervision to the  Pretrial Services in the N. Dist. of Illinois  ,
telephone number _____ , no later than _____ .

( × )  (b)  continue or actively seek employment.

(  )  (c)  continue or start an education program.

(  )  (d)  surrender any passport to: _____

( × )  (e)  not obtain a passport or other international travel document.

( × )  (f)  abide by the following restrictions on personal association, residence, or travel:  Travel and Hotel Stays authorized w/work.
Stay out of DC except for Court or PSA business. Court to approve travel outside the Continental US.

( × )  (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: _____

( × )  (h)  get medical or psychiatric treatment:  Participate in available mental health,psychological and/or psychiatric evaluation
or treatment as deemed necessary; pay all or part of the program's cost based on your ability to pay.

(  )  (i)  return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____

(  )  (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

( × )  (k)  not possess a firearm, destructive device, or other weapon.

(  )  (l)  not use alcohol (    ) at all (    ) excessively.

( × )  (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( × )  (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

( × )  (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

( × )  (p)  participate in one of the following location restriction programs and comply with its requirements as directed.
( × )  (i)  **Curfew.** You are restricted to your residence every day ( × ) from  10:00 pm  to  6:00 am , or (    ) as directed by the pretrial services office or supervising officer; or
(    ) (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
(    ) (iii)  **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

(  )  (q)  submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.
(    ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.

( × )  (r)  report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

( × )  (s)  Notify Pretrial Services in N.D.Illinois 48hrs in advance of travel for work.Notify Pretrial Services when he leaves
and returns from work travel.No travel outside the St. of Illinois.Reside with mother when not traveling for work
Defendant must notify Pretrial Services within 24 hours after returning from work travel.

AO 199C  (Rev. 09/08)  Advice of Penalties                                                    Page  3  of  3  Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

    Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.
    While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year.  This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.
    It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court.  The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.
    If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed.  If you are convicted of:
    (1)  an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
    (2)  an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;
    (3)  any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
    (4)  a misdemeanor –  you will be fined not more than $100,000 or imprisoned not more than one year, or both.
    A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive.  In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of the Defendant

    I acknowledge that I am the defendant in this case and that I am aware of the conditions of release.  I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed.  I am aware of the penalties and sanctions set forth above.

acknowledged on the record
_____
*Defendant's Signature*

_____
*City and State*

## Directions to the United States Marshal

(xx    )  The defendant is ORDERED released after processing.

(      )  The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release.  If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:    4/16/2021                                    _____
                                                        *Judicial Officer's Signature*

                                        Robin M. Meriweather, U.S. Magistrate Judge
                                                        *Printed name and title*

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Gina Michelle Bisignano | ) Case No. CR 21-036 (CJN) |
| | ) |
| *Defendant* | ) |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Gina Michelle Bisignano _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

- ( ✕ )   to appear for court proceedings;
- ( ✕ )   if convicted, to surrender to serve a sentence that the court may impose; or
- ( ✕ )   to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( X ) (1)  This is a personal recognizance bond. / High Intensity Supervision Program

( ) (2)  This is an unsecured bond of $ _____ .

( ) (3)  This is a secured bond of $ _____ , secured by:

   ( ) (a) $ _____ , in cash deposited with the court.

   ( ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:

   If this bond is secured by real property, documents to protect the secured interest may be filed of record.

   ( ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.*  This appearance bond may be forfeited if the defendant does not comply with the above agreement.  The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement.  At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

Case 1:21-cr-00222-TFH   Document 29   Filed 05/26/21   Page 82 of 194
Case 1:21-cr-00036-CJN   Document 21-1   Filed 02/26/21   Page 2 of 2

Page 2

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1)     all owners of the property securing this appearance bond are included on the bond;
(2)     the property is not subject to claims, except as described above; and
(3)     I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date:  02/26/2021

Acknowledged on the Record

_____
*Defendant's signature*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

CLERK OF COURT

Date:  02/26/2021

*Courtney Lesley*
*Signature of Clerk or Deputy Clerk*

Approved.

Date:  02/26/2021

*Carl J. Nichols*
*Judge's signature*

82

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Hunter Ehmke | ) | Case No.  21-MJ-27 (1) |
| | ) | |
| *Defendant* | ) | |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Hunter Ehmke _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

- ( X )  to appear for court proceedings;
- ( X )  if convicted, to surrender to serve a sentence that the court may impose; or
- ( X )  to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( X ) (1)  This is a personal recognizance bond.

(    ) (2)  This is an unsecured bond of $ _____ .

(    ) (3)  This is a secured bond of $ _____ , secured by:

  (    ) (a)  $ _____ , in cash deposited with the court.

  (    ) (b)  the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:

  If this bond is secured by real property, documents to protect the secured interest may be filed of record.

  (    ) (c)  a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.*  This appearance bond may be forfeited if the defendant does not comply with the above agreement.  The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement.  At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

Case 1:21-cr-00029-TSC   Document 3-1   Filed 01/21/21   Page 2 of 2

Page 2

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.*  The court may order this appearance bond ended at any time.  This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.*  I, the defendant – and each surety – declare under penalty of perjury that:

(1)     all owners of the property securing this appearance bond are included on the bond;

(2)     the property is not subject to claims, except as described above; and

(3)     I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.*  I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me.  I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true.  (See 28 U.S.C. § 1746.)

Date: _____                                     unable to sign due to pandemic
                                                                       _____
                                                                                 *Defendant's signature*


_____                       _____
*Surety/property owner – printed name*                           *Surety/property owner – signature and date*


_____                       _____
*Surety/property owner – printed name*                           *Surety/property owner – signature and date*


_____                       _____
*Surety/property owner – printed name*                           *Surety/property owner – signature and date*


                                                   *CLERK OF COURT*

                                                   Philip Tran   Digitally signed
                                                                 by Philip Tran

Date: ___01/21/2021___                             _____
                                                        *Signature of Clerk or Deputy Clerk*

Approved.                                                          Digitally
                                                                   signed by G.
Date: ___01/21/2021___                                             Michael Harvey

                                                        _____
                                                                 *Judge's signature*

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Chad Barrett Jones | ) | Case No.  21-MJ-76 (1) |
| | ) | |
| _Defendant_ | ) | |

### APPEARANCE BOND

### Defendant's Agreement

I, _____ Chad Barrett Jones _____ _(defendant)_, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( ✕ )     to appear for court proceedings;
( ✕ )     if convicted, to surrender to serve a sentence that the court may impose; or
( ✕ )     to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( ✕ ) (1)  This is a personal recognizance bond.

(    ) (2)  This is an unsecured bond of $ _____ .

(    ) (3)  This is a secured bond of $ _____ , secured by:

   (    ) (a)  $ _____ , in cash deposited with the court.

   (    ) (b)  the agreement of the defendant and each surety to forfeit the following cash or other property
   _(describe the cash or other property, including claims on it − such as a lien, mortgage, or loan − and attach proof of ownership and value)_:


   If this bond is secured by real property, documents to protect the secured interest may be filed of record.

   (    ) (c)  a bail bond with a solvent surety _(attach a copy of the bail bond, or describe it and identify the surety)_:



### Forfeiture or Release of the Bond

_Forfeiture of the Bond._  This appearance bond may be forfeited if the defendant does not comply with the above agreement.  The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement.  At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

    (1)     all owners of the property securing this appearance bond are included on the bond;

    (2)     the property is not subject to claims, except as described above; and

    (3)     I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _____

_____
unable to sign due to pandemic
*Defendant's signature*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

*CLERK OF COURT*

Date: 01/28/2021

Philip Tran Digitally signed by Philip Tran

_____
*Signature of Clerk or Deputy Clerk*

Approved.

Date: 01/28/2021

Digitally signed by G. Michael Harvey

_____
*Judge's signature*

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Vitali Gossjankowski | ) | Case No.  21-MJ-105 (1) |
| | ) | |
| *Defendant* | ) | |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Vitali Gossjankowski _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( ✕ )  to appear for court proceedings;
( ✕ )  if convicted, to surrender to serve a sentence that the court may impose; or
( ✕ )  to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( ✕ ) (1)  This is a personal recognizance bond.

(   ) (2)  This is an unsecured bond of $ _____ .

(   ) (3)  This is a secured bond of $ _____ , secured by:

(   )  (a) $ _____ , in cash deposited with the court.

(   )  (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value):*

If this bond is secured by real property, documents to protect the secured interest may be filed of record.

(   )  (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety):*

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.*  This appearance bond may be forfeited if the defendant does not comply with the above agreement.  The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement.  At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

Case 1:21-cr-00222-TFH Document 29-1 Filed 05/26/21 Page 88 of 104
Case 2:21-cr-00123-PLF Document 8-1 Filed 01/19/21 Page 2 of 2

Page 2

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

    (1)      all owners of the property securing this appearance bond are included on the bond;

    (2)      the property is not subject to claims, except as described above; and

    (3)      I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _____

_____
unable to sign due to pandemic
*Defendant's signature*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

CLERK OF COURT

Date:   01/19/2021

Philip Tran  Digitally signed by Philip Tran

_____
*Signature of Clerk or Deputy Clerk*

Approved.

Date:   01/19/2021

Digitally signed by G. Michael Harvey

_____
*Judge's signature*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 21-75 (RDM) |
| MATTHEW RYAN MILLER, | |
| *Defendant.* | |

**ORDER**

For the reasons stated on the record, *see* Minute Entry (Feb. 16, 2021), it is hereby

**ORDERED** that Defendant's motion for release, Dkt. 12, pursuant to 18 U.S.C. §§ 3145(b) and

3142(e) is **GRANTED**. It is further **ORDERED** that the government's motion to request certain

conditions of release, Dkt. 19, is **GRANTED**. And it is further **ORDERED** that Defendant shall be

released pending trial or further order of the Court, subject to the following conditions:

1.  Upon release, Defendant shall immediately report to Pretrial Services at 633 Indiana Ave.
    NW, 9th floor, to be placed on a type of electronic monitoring device to be determined by
    the agency. If Defendant is released from custody after 4:00 p.m., he shall report to
    pretrial services at 10:00 a.m. the next business day to be placed on electronic
    monitoring. He is required to maintain and charge the monitoring device properly each
    day. Any attempt to tamper with or mask the device's monitoring capability may result
    in revocation of his release and/or additional criminal charges or a finding of contempt.

2.  Defendant shall stay out of the District of Columbia except for Court or Pretrial Services
    business or to meet with his attorney.

3.  Upon release, Defendant shall remain on home incarceration at Michele Miller's
    residence and may not change his residence or telephone number without prior

notification to, and approval of, the Court or Pretrial Services. Defendant may travel from his mother's home for work and for such other purposes as Pretrial Services approves. Defendant shall comply with a curfew and must remain in his mother's home from 9 p.m. to 6 a.m.

4. Defendant shall notify Pretrial Services of any travel outside his home jurisdiction and may not travel outside the continental United States without prior approval of the Court.

5. Defendant shall abide by any instructions he receives from pretrial services concerning his release.

6. Defendant must not violate federal, state, or local law while on release.

7. Defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

8. Defendant must submit to testing for a prohibited substance if required by the Pretrial Services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. Defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

9. Defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

10. Defendant shall not possess any firearm, destructive device or other dangerous weapon.

11. Defendant shall avoid all contact, direct or indirect, with any person who is or may be a victim or witness in the investigation or prosecution.

12. Defendant shall surrender any passport to Pretrial Services.

13. Any violation of this Order by the Defendant may be treated as criminal contempt.

2

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  February 19, 2021

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
for the

District of Columbia

United States of America
         v.
      **Rachel Powell**

*Defendant*

)
)
)
)
)

Case No.  21-mj-197

**FILED**

**FEB 11 2021**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## APPEARANCE BOND

### Defendant's Agreement

I,         **Rachel Marie Powell**         *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

    ( X )    to appear for court proceedings;
    ( X )    if convicted, to surrender to serve a sentence that the court may impose; or
    ( X )    to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( X ) (1)   This is a personal recognizance bond with location monitoring and supervision by the Western District of Pennsylvania.

(   ) (2)   This is an unsecured bond of $ _____ .

(   ) (3)   This is a secured bond of $ _____ , secured by:

    (   ) (a) $ _____ , in cash deposited with the court.

    (   ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:

    If this bond is secured by real property, documents to protect the secured interest may be filed of record.

    (   ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond*  This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

Page 2

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

    (1)    all owners of the property securing this appearance bond are included on the bond;

    (2)    the property is not subject to claims, except as described above, and

    (3)    I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _____

                                          *Defendant's signature*

_____        _____
*Surety/property owner – printed name*        *Surety/property owner – signature and date*

_____        _____
*Surety/property owner – printed name*        *Surety/property owner – signature and date*

_____        _____
*Surety/property owner – printed name*        *Surety/property owner – signature and date*

*CLERK OF COURT*

Date: 2/11/2021

                                  *Signature of Clerk or Deputy Clerk*

Approved.

Date: *Feb. 11, 2021*

                                  *Judge's signature*

Beryl A. Howell, Chief United States District Judge

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

**UNITED STATES OF AMERICA**

**VS.**                                    **CASE NO: 6:21-mj-1047-EJK**

**JOSEPH RANDALL BIGGS**

---

### APPEARANCE BOND

#### Defendant's Agreement

I, Joseph Randall Biggs, (*defendant*), agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

      ☑      to appear for court proceedings;

      ☑      if convicted, to surrender to serve a sentence that the court may impose; or

      ☑      to comply with all conditions set forth in the Order Setting Conditions of Release.

#### Type of Bond

**(1)**    **This is an unsecured bond of $25,000.00**

#### Forfeiture or Release of the Bond

*Forfeiture of the Bond.*   This appearance bond may be forfeited if the defendant does not comply with the above agreement.   The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement.   At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

*Release of the Bond.*   The court may order this appearance bond ended at any time.   This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

AO 98 (Rev. 12/11) Appearance Bond                                                                            Page 2

## Declarations

*Ownership of the Property.*   I, the defendant – and each surety – declare under penalty of perjury that:

(1)   all owners of the property securing this appearance bond are included on the bond;
(2)   the property is not subject to claims, except as described above; and
(3)   I will not sell the property, allow further claims to be made against it, or do anything to reduce its
       value while this appearance bond is in effect.

*Acceptance.*   I, the defendant – and each surety- have read this appearance bond and have either read all the
conditions of release set by the court or had them explained to me.   I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C.
§ 1746.)

Date: January 20, 2021                                    _____
                                                                    *Defendant's signature*


                                                            *CLERK OF COURT*

Date: January 20, 2021                                           *T. LeGros*
                                                            _____
                                                            T. LeGros, *Deputy Clerk*

Approved.

                                                                    Date: January 20, 2021

                                                            _____
                                                                    EMBRY J. KIDD
                                                            UNITED STATES MAGISTRATE JUDGE

Case 1:21-cr-00074-TFH   Document 11-1   Filed 01/19/21   Page 2 of 2

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Joshua Colt | ) | Case No.  21-MJ-21 |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Joshua Colt _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

       ( ✕ )    to appear for court proceedings;

       ( ✕ )    if convicted, to surrender to serve a sentence that the court may impose; or

       ( ✕ )    to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( ✕ ) (1)  This is a personal recognizance bond.

(   ) (2)  This is an unsecured bond of $ _____ .

(   ) (3)  This is a secured bond of $ _____ , secured by:

    (   ) (a) $ _____ , in cash deposited with the court.

    (   ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it − such as a lien, mortgage, or loan − and attach proof of ownership and value)*:

        If this bond is secured by real property, documents to protect the secured interest may be filed of record.

    (   ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.*  This appearance bond may be forfeited if the defendant does not comply with the above agreement.  The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement.  At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

Case 1:21-cr-00074-TFH   Document 11-1   Filed 01/19/21   Page 2 of 2

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

    (1)      all owners of the property securing this appearance bond are included on the bond;

    (2)      the property is not subject to claims, except as described above; and

    (3)      I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _____                                   unable to sign due to pandemic
                                                                        *Defendant's signature*

_____                  _____
*Surety/property owner – printed name*              *Surety/property owner – signature and date*

_____                  _____
*Surety/property owner – printed name*              *Surety/property owner – signature and date*

_____                  _____
*Surety/property owner – printed name*              *Surety/property owner – signature and date*

*CLERK OF COURT*

Philip Tran   Digitally signed by Philip Tran

Date: ____01/19/2021____

_____
*Signature of Clerk or Deputy Clerk*

Approved.                                                Digitally signed by G. Michael Harvey

Date: ____01/19/2021____

_____
*Judge's signature*

AO 199A (Rev. 06/19)  Order Setting Conditions of Release                                                      Page 1 of ___3___ Pages

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  CR21-73-01 |
| Nicholas Joseph DeCarlo | ) | |
| *Defendant* | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)  The defendant must not violate federal, state, or local law while on release.

(2)  The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)  The defendant must advise the court or the pretrial services office or supervising officer in writing before making
     any change of residence or telephone number.

(4)  The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that
     the court may impose.

The defendant must appear at:   U.S. District Court for the District of Columbia, 333 Constitution Ave NW, WDC
                                                                          *Place*

                                                Judge Beryl A. Howell

on _____2/12/2021 10:45 am_____
                                                *Date and Time*

If blank, defendant will be notified of next appearance.

(5)  The defendant must sign an Appearance Bond, if ordered.

AO 199B   (Rev. 12/11) Additional Conditions of Release

Page 2 of 3 Pages

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(    )   (6)    The defendant is placed in the custody of:

     Person or organization _____

     Address *(only if above is an organization)* _____

     City and state _____ Tel. No. _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____    _____
                            *Custodian*                         *Date*

( X )   (7)    The defendant must:

    ( X )   (a)   submit to supervision by and report for supervision to the    Pretrial Services as directed       ,
                 telephone number    (817) 900-1863 , no later than _____ .

    (   )   (b)   continue or actively seek employment.

    (   )   (c)   continue or start an education program.

    (   )   (d)   surrender any passport to: _____

    ( X )   (e)   not obtain a passport or other international travel document.

    ( X )   (f)   abide by the following restrictions on personal association, residence, or travel:    Travel restricted to the Northern District
               of Texas. Court approval needed for travel outside continental U.S.

    (   )   (g)   avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: _____

    (   )   (h)   get medical or psychiatric treatment: _____

    (   )   (i)   return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____

    (   )   (j)   maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

    (   )   (k)   not possess a firearm, destructive device, or other weapon.

    (   )   (l)   not use alcohol (    ) at all (    ) excessively.

    ( X )   (m)   not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

    (   )   (n)   submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

    (   )   (o)   participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

    ( X )   (p)   participate in one of the following location restriction programs and comply with its requirements as directed.

         ( X ) (i)   **Curfew.** You are restricted to your residence every day (   ) from   7:00 pm   to   6:00 am   , or ( X ) as directed by the pretrial services office or supervising officer; or

         (   ) (ii)   **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or

         (   ) (iii)   **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

    ( X )   (q)   submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.

         (   ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.

    (   )   (r)   report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

    ( X )   (s)   Stay away from Washington, DC except for court, meetings with attorney or PSA.

         Do not possess firearms. Comply with courtesy supervision in the Northern District of Texas.

         Curfew can be modified by NDTX upon verification of work schedule.

         Completely prohibited from posting on Facebook and YouTube, all posts on other online forums, websites, or other social media sites to be done using real name Nicholas DeCarlo.

         Report any arrests and traffic stops to Pretrial within 72 hours

AO 199C (Rev. 09/08) Advice of Penalties

Page **3** of **3** Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

Acknowledged on the record on February 10, 2021.

_____
*Defendant's Signature*

_____
*City and State*

### Directions to the United States Marshal

(xx   ) The defendant is ORDERED released after processing.

(     ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:   02/10/2021 *nunc pro tunc*     _____
*Judicial Officer's Signature*

Magistrate Judge Robin Meriweather
_____
*Printed name and title*

DISTRIBUTION:   COURT   DEFENDANT   PRETRIAL SERVICE   U.S. ATTORNEY   U.S. MARSHAL

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
## for the
### District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Nicholas Ochs | ) | Case No.  21-MJ-15 |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Nicholas Ochs _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( X )    to appear for court proceedings;
( X )    if convicted, to surrender to serve a sentence that the court may impose; or
( X )    to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( X ) (1)   This is a personal recognizance bond.

(   ) (2)   This is an unsecured bond of $ _____ .

(   ) (3)   This is a secured bond of $ _____ , secured by:

    (   ) (a) $ _____ , in cash deposited with the court.

    (   ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it − such as a lien, mortgage, or loan − and attach proof of ownership and value)*:

    If this bond is secured by real property, documents to protect the secured interest may be filed of record.

    (   ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1)     all owners of the property securing this appearance bond are included on the bond;
(2)     the property is not subject to claims, except as described above; and
(3)     I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _____                            unable to sign due to pandemic
                                                                *Defendant's signature*

_____            _____
*Surety/property owner – printed name*           *Surety/property owner – signature and date*

_____            _____
*Surety/property owner – printed name*           *Surety/property owner – signature and date*

_____            _____
*Surety/property owner – printed name*           *Surety/property owner – signature and date*

*CLERK OF COURT*

Philip Tran   Digitally signed by Philip Tran

Date: 01/15/2021
                                                                *Signature of Clerk or Deputy Clerk*

Approved.
                                                                Digitally signed by G. Michael Harvey
Date: 01/15/2021
                                                                *Judge's signature*

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Jenny Cudd | )    Case No.  21-MJ-35 (1) |
| | ) |
| _____ | ) |
| *Defendant* | ) |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Jenny Cudd _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

       ( ✕ )    to appear for court proceedings;

       ( ✕ )    if convicted, to surrender to serve a sentence that the court may impose; or

       ( ✕ )    to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

( ✕ ) (1)  This is a personal recognizance bond.

(   ) (2)  This is an unsecured bond of $ _____ .

(   ) (3)  This is a secured bond of $ _____ , secured by:

      (   ) (a)  $ _____ , in cash deposited with the court.

      (   ) (b)  the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:

         If this bond is secured by real property, documents to protect the secured interest may be filed of record.

      (   ) (c)  a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.*  This appearance bond may be forfeited if the defendant does not comply with the above agreement.  The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement.  At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1)     all owners of the property securing this appearance bond are included on the bond;

(2)     the property is not subject to claims, except as described above; and

(3)     I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date: _____          unable to sign due to pandemic
                                         _____
                                         *Defendant's signature*

_____          _____
*Surety/property owner – printed name*          *Surety/property owner – signature and date*

_____          _____
*Surety/property owner – printed name*          *Surety/property owner – signature and date*

_____          _____
*Surety/property owner – printed name*          *Surety/property owner – signature and date*

                                         *CLERK OF COURT*

                                         Philip Tran  Digitally signed by Philip Tran

Date: __01/21/2021__                     _____
                                         *Signature of Clerk or Deputy Clerk*

Approved.                                          Digitally signed by G.
                                                   Michael Harvey
Date: __01/21/2021__                     _____
                                         *Judge's signature*