Case 1:21-cr-00222-TFH   Document 46   Filed 11/11/21   Page 1 of 5

**tacopina seigel trial lawyers**
TACOPINA SEIGEL & DEOREO

**JOSEPH TACOPINA**
EMAIL: jtacopina@tacopinalaw.com
www.tacopinalaw.com

275 Madison Avenue, 35th Floor
New York, NY 10016
Telephone (212) 227-8877
Facsimile (212) 619-1028

November 11, 2021

Hon. Thomas F. Hogan
United States District Court
District of Columbia
333 Constitution Ave. NW
Washington, D.C. 20001

    Re:  **United States v. Julian Khater**
        **Docket No. 21-cr-00222 (TFH)**

Your Honor:

  The defense respectfully submits this letter on behalf of defendant Julian Khater, to apprise the Court of ongoing difficulties interfering with Mr. Khater's ability to review his discovery and, accordingly, our ability to effectively work with him in the preparation of his defense.

  As the Court will recall, during our last status conference on October 4, 2021, defense counsel advised that Mr. Khater's discovery was being withheld from him by the Correctional Treatment Facility ("CTF") without any explanation. In fact, despite the CTF receiving from defense counsel a batch of discovery earmarked for Mr. Khater on August 23rd, the facility did not provide it to him until 45 days later on October 7th. In other words, while Mr. Khater languished in pretrial detention, this case was needlessly delayed for a month and a-half, all because the detention facility would not deliver his discovery to him.

  Notably, after defense counsel raised Mr. Khater's inability to review his discovery during the October 4th status conference, the Court invited defense counsel to bring any additional and/or ongoing problems to its attention. Accordingly, we do so now.

  Specifically, after Mr. Khater was ultimately granted access to his discovery on October 7th, the detention facility prematurely took it away from him within less than two weeks, before he could complete his review of the material, which included extensive video.

  As a result, on October 19, 2021, my firm emailed the CTF's litigation unit to request that

TACOPINA SEIGEL & DEOREO

Hon. Thomas F. Hogan
November 11, 2021
Page Two

Mr. Khater's discovery be returned to him.[1] In response, the litigation unit sent a reply email, falsely stating that our client "was allowed 14 days to review his discovery." As referenced above, he was only afforded 11 days to do so. And, in any event, 14 days would still not have been a sufficient period for our client to be granted access to his voluminous discovery.

In light of the foregoing, my firm emailed the CTF's litigation unit on Tuesday, October 19th, requesting "more time for Mr. Khater to review his discovery," explaining that defense counsel from New York "plan[ned] to visit with him on November 4, 2021" and that "it would be useless for [us] to meet with Mr. Khater without him viewing all the discovery beforehand." That email received no response. Thus, on Thursday, October 21, 2021, my firm again emailed the litigation unit, inquiring if it could advise "if and when Julian Khater may get to view his discovery to completion." That same day, the litigation unit replied by email that "Mr. Khater will receive a laptop before the week is out."[2] And although a week later, on October 28, 2021, the litigation unit sent my firm an email averring that "Mr. J. Khater is currently reviewing his discovery," and simultaneously told Mr. Khater that the discovery was awaiting him in his cell, both claims were patently false. Indeed, Mr. Khater never received his discovery before the preceding "week [was] out" or by October 28th of the following week. In fact, on October 29th, my firm was compelled to send an email to the CTF's litigation unit, stating:

> I just personally spoke with our client, Julian Khater who confirmed that he has yet to receive his discovery again, contrary to what [the litigation unit] emailed me on October 28, 2021. It is imperative that our client get access to his discovery to complete his review. I understand Mr. Khater only had access to his discovery the first time, on October 7th for eleven days – 3 days less than the policy 14 days period. Please advise why we were informed that Mr. Khater was "currently viewing his discovery" when he has yet to receive it as well as when he will be granted such access.

In response to the preceding email, on October 29, 2021, an attorney advisor from the D.C. Department of Corrections' Office of the General Counsel weighed in for the first time, offering up by email a vague and conclusory explanation for the CTF's continued misrepresentations and failure to provide Mr. Khater with his discovery. In short, the Department of Corrections cited a purported

---

[1] The defense is prepared to provide the emails referenced herein if deemed necessary by the Court.

[2] Because the discovery is provided in electronic format, Mr. Khater can only review it on a computer.

**TACOPINA SEIGEL & DEOREO**

Hon. Thomas F. Hogan
November 11, 2021
Page Three

"miscommunication":

> Unfortunately, do to a miscommunication your client was not provided the laptop last week. However, I have confirmed that he is receiving it and his discovery today. He will receive the laptop for 7 more days to allow for your client meeting and then the laptop will be removed.

Based on the preceding assurance, defense counsel traveled nearly five hours to Washington, D.C. on November 4th, in order to visit Mr. Khater at the CTF and review together with him the discovery, including important video footage. Notably, our ability to meaningfully discuss such video footage with Mr. Khater cannot be reasonably achieved unless viewed together in person. Yet, upon arriving at the CTF and meeting with Mr. Khater in a visiting room, we learned that he was not permitted to bring a laptop containing his discovery with him for our meeting. Moreover, when we requested to speak with a supervisor at the CTF during our visit to address the matter, not one would speak with us. Consequently, the facility frustrated the very reason we traveled from the New York area to Washington, D.C. to meet with Mr. Khater.

Worse still, 79 days have passed since the CTF first received Mr. Khater's discovery and, in all that time, we have not yet had the ability to review such material with him in an effective manner. Stated otherwise, notwithstanding our previously stated concerns, Mr. Khater is still suffering pretrial delay while jailed simply because of inexplicable problems relating to discovery caused by the D.C. Department of Corrections.

Beyond the fact the Department of Corrections' claim of "miscommunication" smacks of incredulity on its face, its systematic ill treatment of Mr. Khater evinces that its obstructionist conduct with regard to his discovery is deliberate. By way of background, since first being detained at the CTF in April, Mr. Khater has been tormented by his jailers. The laundry list of abuses within the D.C. prison system has been widely reported, prompting the Hon. Royce Lamberth to rebuke existing jail conditions as "deplorable" and "beyond belief."[3] In addition, Judge Lamberth

---

[3] Judge Lamberth issued that scathing indictment of the D.C. jail in connection with the release (to home detention) of January 6th defendant Christopher Worrell, who is accused of assaulting law enforcement with pepper spray in *United States v. Worrell*, docket no. 21-cr-00292 (RCL). *See* CNN article, dated November 3, 2021; https://www.cnn.com/2021/11/03/ politics/jan-6-rioter-released-unsafe-jail-conditions/index.html. Significantly, despite earlier judicial assessments that certain defendants posed too great a risk of danger to be released, hindsight has shown us otherwise. In fact, Mr. Khater's co-defendant, George Tanios, who was previously remanded, has not only since been released but proven himself to pose no such threat, resulting in the elimination of his home detention on November 3, 2021.

TACOPINA SEIGEL & DEOREO

Hon. Thomas F. Hogan
November 11, 2021
Page Four

made public a report from the Marshals Service, dated November 1, 2021, documenting that the officers at the Central Detention Facility ("CDF"), among other things, (1) withheld water and food from detainees for punitive reasons, (2) caused large amounts of standing urine and feces to remain within the toilets of multiple occupied cells, resulting in an overpowering stench, (3) served hot meals in a cold and congealed condition; and (4) antagonized detainees. *United States v. Worrell*, docket no. 21-cr-00292 (RCL), document no. 123. Although that same report noted that conditions at the CTF, where Mr. Khater is jailed, were "largely appropriate," as Judge Lamberth noted with regard to such cautious language, "The marshal did not say conditions at the CTF were not egregious," clarifying, "He simply said they were not as egregious as at the [CDF]."[4]

The conditions at the CTF, which Mr. Khater has been compelled to endure for well over 200 days, are indeed egregious. As an initial point, Mr. Khater has been confined to a small cell, approximately 7 feet by 11 feet in area. Because mold was discovered in various cells, Mr. Khater is now forced to share that diminutive space with another detainee. Further adding to its claustrophobic atmosphere is the fact that there is virtually no space for movement, as one half of the cell is occupied by a metallic bunk bed, while the other half houses a toilet and sink. Worse still, the only window within the cell is approximately one foot wide and covered in a mesh that prevents viewing of the outside world. And as if those bleak circumstances were not sufficiently dispiriting to break one's resolve, Mr. Khater is largely subject to solitary confinement within that cold, dismal setting. Indeed, Mr. Khater is locked within his cell for 25½ consecutive hours every other day.

Being afforded a flattened one-inch mattress upon which to slumber, without any pillow, Mr. Khater has suffered inordinate difficulty sleeping, causing his emotional state to deteriorate. And, to ensure that Mr. Khater suffers sleep deprivation, his jailers deliver his breakfast at 2:30 am, banging loudly on his cell to disturb any possible respite. Clearly, these tactics are designed to dehumanize Mr. Khater. And lest there is any question about that fact, the CTF will not permit Mr. Khater the dignity of even grooming, causing his outward appearance to become as unkempt as his crumbling emotional state.

Unfortunately, Mr. Khater's physical state is not immune from the prison's abuse, as the CTF has provided him with subhuman sustenance. Separate and apart from him only being given two square slices of processed cheese and broccoli tips as an excuse for dinner, the so-called "meals" appear to have been doused with toxic chemicals, as they emit the smell and taste of ammonia.

In addition to undermining Mr. Khater's emotional and physical health, the CTF has trampled

---

[4]*See* Washington Post article, dated November 3, 2021; https://www.washingtonpost.com/local/legal-issues/dc-jail-conditions-inspection/2021/11/03/c75d08ea-3c27-11ec-bfad-8283439871ec_story.html.

TACOPINA SEIGEL & DEOREO

Hon. Thomas F. Hogan
November 11, 2021
Page Five

upon his spiritual well-being, as it cruelly deprives him of religious services. And, to aggravate matters, Mr. Khater must suffer all these indignities while being cutoff from his loved ones. In fact, for inexplicable reasons, Mr. Khater has been denied the opportunity to receive visits from his family members. As a result, during this incredibly trying time, he has not been able to embrace a loved one since his arrest on March 14th – 242 days ago.

As Fyodor Dostoevsky wrote, "the degree of civilization in a society can be judged by entering its prisons." If so, the conditions at the CTF do not bode well for such a judgment. As noted above, the punitive nature of Mr. Khater's systematic treatment as a detainee reflects that the prison's obstructionist behavior regarding his discovery is designed to disadvantage him as a criminal defendant. In fact, though Mr. Khater has filed at least a half-dozen grievances with the jail, including those with respect to his withheld discovery, they have fallen on deaf ears. Consequently, we respectfully turn to the Court for help in safeguarding Mr. Khater's Constitutional rights, including the right to adequately defend himself and to a speedy trial. Neither right can be realized so long as the jail continues to prevent Mr. Khater from fully reviewing his discovery, both with and without counsel.

In *United States v. Salerno*, the Supreme Court held that the Bail Reform Act, which permits pretrial detention in certain "carefully limited exception[s]," facially comports with due process because it serves a regulatory purpose, and is not punitive in nature. 481 U.S. 739, 755 (1987). That being said, the Supreme Court contemplated some point "at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." Id. at 747, 107 S.Ct. 2095 n.4. Irrespective of its duration, however, pretrial detention is unquestionably punitive when a detainee is subject to the abuses described herein. Accordingly, we seek the Court's assistance in protecting Mr. Khater from the onerous punitive conditions of his pretrial detention. It serves no regulatory purpose and instead inflicts upon him unacceptable suffering, pain, and humiliation. Our Criminal Justice System should strive to be far better than this.

Your consideration is greatly appreciated.

Respectfully submitted,

Joseph Tacopina

cc: AUSA Anthony Scarpelli
AUSA Gilead Light